1

2  Anton Ewing
   3077 B Clairemont Drive #372
3  San Diego, CA 92117
   (619) 719-9640
4  anton@antonewing.com

5

6  Plaintiff in Pro Per

7

8



FILED

Dec 18 2018

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY        s/ jennifern        DEPUTY

9

10

11

12

# THE UNITED STATES FEDERAL DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

13  Anton Ewing, an individual,          )   Civil Case No. '18CV2843 LAB JLB
                                         )
14                                       )   **COMPLAINT**
          Plaintiff,                     )
15                                       )
                                         )
16        vs.                            )   **TCPA 47 USC §227(b)(1)(A)**
                                         )   **TCPA 47 USC §227(c)(5)**
17                                       )   **CIPA PC §637.2 and §637.2**
   Powur, PBC, a Delaware public benefit )
18  corporation;                        )
   Jonathan Gregory Budd, an individual; )
19  Larry McKinney, an individual;      )
   NB Baker Electric, Inc., a California )
20  corporation;                        )
21                                       )
                                         )
22        Defendants.                    )
                                         )
23                                       )
                                         )
24                                       )
                                         )
25

     May it please the Court, Plaintiff Anton Ewing (herein "Plaintiff" or

"Ewing"), for this complaint against Defendants Powur, PBC and its present,

former and future direct and indirect parent companies, subsidiaries, affiliates and

agents ("Powur, PBC"), JONATHAN GREGORY BUDD, an individual and

officer of Powur, PBC ("Budd"), Larry McKinney, an individual, employee and

agent of Powur, PBC ("McKinney"), and NB Baker Electric, Inc., a California

corporation doing business as Baker Electric Home Energy ("Baker"), alleges as

follows:

## I.    INTRODUCTION

1.     The TCPA causes of action (47 USC §227(b) and (c)) filed herein for, *inter*

*alia*, illegal telemarketing to Plaintiff's DNC registered cellular phone and home

phone through the use of an ATDS is expressly alleged against Defendants Powur,

PBC and its present, former and future direct and indirect parent companies,

subsidiaries, affiliates and agents, JONATHAN GREGORY BUDD, an individual

and officer of Powur, PBC, Larry McKinney, an individual, and NB Baker

Electric, Inc., doing business as Baker Electric Home Energy.

2.     The CIPA cause of action (PC §§§632, 637.2, 632.7) filed herein for illegal

recording of the telemarketing call to Plaintiff's phone without disclosure of the

recording is alleged against Defendants Powur, PBC and its present, former and

future direct and indirect parent companies, subsidiaries, affiliates and agents,

JONATHAN GREGORY BUDD, an individual and officer of Powur, PBC, Larry

McKinney, an individual, and NB Baker Electric, Inc. doing business as Baker

Electric Home Energy.

18CV

3.    <u>Nature of Action</u>. Something is rotten in Pakistan, to wit: Powur, PBC and NB Baker Electric, Inc., working together and in concert, conspiring with its agents and employees, have been bombarding Mr. Ewing, without his consent, with autodialed and prerecorded calls ("robocalls") as well as "live-transfer" calls using an ATDS at defined by the 9th Circuit in the *Marks vs. Crunch* case.. Mr. Ewing begged Powur, PBC and NB Baker Electric, Inc. to stop these illegal calls, but since then, Defendant Powur, PBC and its hired and controlled agents have robocalled Plaintiff dozens more times. Baker pays Powur a huge commission for each telemarketing call that "closes." Mr. Ewing brings this action under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), in hopes that an injunction and damages will encourage Powur, PBC, Budd, McKinney and NB Baker Electric, Inc. to change their ways.

## II. PARTIES

4.    Plaintiff Anton Ewing is a citizen of California who conducts business in California, in this District.

5.    Defendant Powur, PBC is a public benefit corporation organized under the laws of the State of Delaware with its principal place of business at 2683 Via De La Valle #G321, Del Mar, CA 92017 . Powur, PBC does business in this District and throughout the United States. Powur is not registered with the California Secretary of State and is thus doing business illegally in California.

18CV

6.     JONATHAN GREGORY BUDD is the president, CEO, manager, director, officer, and alter ego of Powur, PBC.  Budd is the sole shareholder of Powur since his relative passed away this year (Andrea A Budd).  Budd does not respect the Powur, PBC formalities of entity operation and therefore he is not protected by its veil.  Budd uses Powur as his personal slush fund.

7.     Larry McKinney, is an individual, employee and agent of Powur, PBC. During 2018, McKinney performed telemarketing activities by, for and on behalf of Powur, PBC at the direction and control of Budd.  McKinney owns, controls and uses phone number 858-337-6493 to engage in his scam telemarketing on behalf of his employer, Powur, PBC.  McKinney is a citizen of California.  Upon information and belief, McKinney hired a David Brown (also at Powur), who calls himself a senior Manager at 509-528-3496 and using email address freesolarproposals.info@gmail.com.  David Brown and McKinney hired and paid "Raja" from Pakistan to run, operate and manage a telemarketing operation to auto-dial, with an ATDS, thousands of Americans each day, including Plaintiff on many occasions.  The scale of the operation is and was enormous.  Budd, McKinney and Brown have illegally profited over one million dollars from their telemarketing scam from NB Baker Electric.

8.     BUDD has knowingly and intentionally hired, directed and ordered NB Baker Electric, Inc, Powur, PBC and McKinney to obtain telemarketing leads and

18CV

appointments through telemarketing activities in violation of the TCPA, CIPA and extortion laws of California.  Budd is currently being sued by other American citizens for telemarketing violations and incessant telemarketing calls.  Budd runs Powur as multi-level marketing pyramid scam.

9.    NB Baker Electric, Inc., is a California corporation with offices Escondido, California.

10.    Larry McKinney is a senior employee of Powur, PBC and resides in Pacific Beach, California.  McKinney calls himself a Powur "National Executive Advisor" which is a very high level in the multi-level pyramid marketing scam (MLM) for Powur, PBC.  McKinney has be building his down-line in the MLM scam at Powur for 2 years and 8 months.  McKinney held a job for one year with Harley Davidson in 2014.  Prior to that, McKinney worked for Adroit Energy for five months and then Herca Solar for 1 year and 8 months as a solar panel telemarketer.  McKinney has a bachelor's degree in psychology from San Diego State University which he attended from 1987 to 1999.

### III. JURISDICTION AND VENUE

11.    Jurisdiction. This Court has federal-question subject matter jurisdiction over the Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). This Court has supplemental subject matter jurisdiction over the Plaintiff's claim arising

18CV

under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*, Civil Code §1770(a)(22)(A), and California Invasion of Privacy Act, Penal Code §637.2, §632.7 because those claims:

    a. arises from the same nucleus of operative fact, i.e., Defendant's telemarketing robocalls to Plaintiff;

    b. adds little complexity to the case; and

    c. relies on the same nucleus of facts, so it's unlikely to predominate over the TCPA claims.

12.  <u>Personal Jurisdiction.</u> This Court has personal jurisdiction over Powur, PBC because a substantial part of the wrongful acts alleged in this Complaint were committed in California. For example, Powur, PBC made illegal telemarketing robocalls to Mr. Ewing, while he was in California. Budd, who is the officer, director, and manager of Powur, PBC, has also subjected himself to personal jurisdiction in California because he is running said criminal operation. Budd uses Powur, PBC to pay for his personal expenses that have nothing to do with the business or its required public purposes. It is a crime to violate 47 USC §501 by violating 47 USC §227(b). Powur, PBC is not registered to do business in California and Budd knowingly directed Powur, PBC to engage in illegal telemarketing in violation of the TCPA. Raja, at the direction, order and command of Brown, McKinney and Budd, initiated the primary telemarketing calls to

18CV

Plaintiff and then sold, transferred and provided the lead to the other defendants in this matter in a knowingly illegal manner.  Powur controlled the telemarketing script that Raja had to record answer thereto from his telemarketing victims, including Plaintiff.

13.     "Where, as here, there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006); *Panavision Intern., L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). "Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdiction analyses under state law and federal due process are the same." *Yahoo!*, 433 F.3d at 1205 (citing Panavision, 141 F.3d at 1320). Due process requires that Defendants must have minimum contacts with the forum such that the assertion of jurisdiction in that forum "'does not offend traditional notions of fair play and substantial justice.'" *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2005) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 315, 66 S. Ct. 154, 90 L. Ed. 95 (1945)).

14.     There are two types of personal jurisdiction: general and specific. *Daimler AG v. Bauman*, 134 S. Ct. 746, 754-55, 187 L. Ed. 2d 624 (2014). "For general jurisdiction to exist over a nonresident defendant . . . , the defendant must engage in 'continuous and systematic general business contacts,' that 'approximate physical

18CV

presence' in the forum state." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984); *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000)) (internal citations omitted).  To establish specific jurisdiction, Plaintiff must show: "(1) [t]he non-resident defendant . . . purposefully direct[ed] [its] activities or consummate[d] some transaction with the forum or resident thereof; or perform some act by which [it] purposefully avail[ed] [itself] of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Id.* at 802.  At least two courts in the 9th have found specific jurisdiction in circumstances similar to this case. One court found personal jurisdiction where the out-of-state defendant sent numerous unsolicited fax advertisements to a California-based plaintiff. *Global Commc'ns, Inc. v. Blue Jay, Inc.*, No. C 08-4254 PJH, 2009 U.S. Dist. LEXIS 1616, 2009 WL 29905, at *2, 8-10 (N.D. Cal. Jan. 5, 2009). Another court found personal jurisdiction where the defendant operated a website that the California-plaintiff used, called and emailed the plaintiff numerous times, and the plaintiff's claims arose out of those contacts. *Heidorn v. BDD Mktg. & Mfg. Co., LLC*, No. C-13-00229 JCS, 2013 U.S. Dist.

18CV

LEXIS 177166, 2013 WL 6571629, at *8 (N.D. Cal. Aug. 19, 2013). *Drew v.*

*Lexington Consumer Advocacy, LLC*, No. 16-cv-00200-LB, 2016 U.S. Dist.

LEXIS 52385, at *4-7 (N.D. Cal. Apr. 18, 2016)

15.    Venue. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-

(2) because a substantial part of the events giving rise to the claims occurred in this

District and because Defendant McKinney resides in, i.e., is subject to personal

jurisdiction in, this District.  Moreover, Powur, PBC is not registered with the

California Secretary of State but does substantial business in this District.  NB

Baker Electric, Inc. has purposefully directed its activities to California and

advertises that it does business in California on its web page.

### IV. TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227

16.    In 1991, Congress enacted the TCPA in response to a growing number of

consumer complaints regarding telemarketing.

17.    The TCPA makes it unlawful "to make any call (other than a call made for

emergency purposes or made with the prior express consent of the called party)

using an automatic telephone dialing system or an artificial or prerecorded voice…

to any telephone number assigned to a … cellular telephone service." 47 U.S.C.

§227(b)(1)(A)(iii).

18.    The TCPA makes it unlawful "to initiate any telephone call to any

residential telephone line using an artificial or prerecorded voice to deliver a

18CV

message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

19.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

20.     The TCPA makes it unlawful to make telemarketing solicitations to telephone numbers on the National Do Not Call Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

21.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c). 47 U.S.C. § 227(c)(5).

22.     According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

23.     The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

24.     The FCC requires "prior express written consent" for all autodialed or

prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted).

25.     FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

26.     The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

27.     The 9th Circuit has defined an ATDS as follows: "we conclude that the statutory definition of ATDS is not limited to devices with the capacity to call

18CV

numbers produced by a "random or sequential number generator," but also includes devices with the capacity to dial stored numbers automatically. Accordingly, we read § 227(a)(1) to provide that the term automatic telephone dialing system means equipment which has the capacity—(1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers."

28.    Senator Fritz Hollings complained, "[c]omputerized calls are the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall." 137 Cong. Rec. S16, 205 (daily ed. Nov. 7, 1991) (statement of Sen. Hollings). Recipients deemed that "automated telephone calls that deliver an artificial or prerecorded voice message are more of a nuisance and a greater invasion of privacy than calls placed by 'live' persons." S. Rep. No. 102-178, at 4.

29.    The plausibility standard 'calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the defendant's liability." *Miyahira v. Vitacost.com, Inc.*, 715 F.3d 1257, 1265 (11th Cir. 2013) (quoting *Twombly*, 550 U.S. at 556). The Federal Communications Commission ("FCC")— which has authority to implement the TCPA's provisions, *see* 47 U.S.C. § 227(b)(2)— has stated that a plaintiff, to establish a TCPA violation, "need only

show that [the Defendant] called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012).  Because the Defendants have violated multiple subsections of 47 U.S.C. §227, including but not limited to 47 U.S.C. §227(b)(1)(A) and §227(c), then Defendants, and each of them, have committed the criminal violation of 47 U.S.C. §501.

30.    "[P]rior express consent is an affirmative defense, not an element of the claim," meaning a plaintiff "need not plead that he did not give his prior express consent." *Manfred v. Bennett Law, PLLC*, No. 12–CV–61548, 2012 WL 6102071, at *2 (S.D. Fla. Dec. 7, 2012).  Rather, "[t]he only thing [a] [p]laintiff must plead to establish a violation of the TCPA is that the [d]efendants left voicemail messages at a number assigned to a cellular telephone service using an automatic dialing system or an artificial or pre-recorded voice." *Id.* (denying motion to dismiss for failure to state a claim where the plaintiff alleged "that [the] [d]efendants used an Automatic Telephone Dialing System or an artificial or pre-recorded voice to place the telephone calls to [the] [p]laintiff's cellular phone.").

31.    Plaintiff Ewing alleges that Defendants placed repeated automated telephone (ATDS)  calls to Plaintiff Ewing's cell phone (619-719-9640) from Defendant's phones and that the calls exhibited signs of being made with an Automatic Telephone Dialing System, including repeated telemarketing calls to Plaintiff

Ewing within a period of time (over the last five months) and the presence of a pause or click (which is proven by the recording), which is commonly associated with an Automated Telephone Dialing System (ATDS). Those allegations are true and are sufficient to establish the elements of a TCPA claim. Defendant Powur, PBC's telemarketing agent also admitted on the call that they used an ATDS to initiate the dialing of the call to Plaintiff Ewing.

32.     ABC, Inc (a Doe Defendant to be named after discovery reveals the same) that was hired by Powur, PBC and BUDD to knowingly and intentionally make robo-dialed calls to Plaintiff Ewing with a pre-recorded voice message that was used for telemarketing purposes between February 10, 2017 and December 13, 2018. ABC, Inc has subsequently made illegal telemarketing calls to Ewing and discovery may very well lead to adding ABC, Inc as a defendant herein.

33.     California Civil Code section 1770(a)(22)(A) prohibits prerecorded telemarketing messages.

34.     As Judge Easterbrook of the Seventh Circuit recently explained in a TCPA case regarding calls to a non-debtor similar to this one:

> The Telephone Consumer Protection Act...is well known for its provisions limiting junk-fax transmissions. A less-litigated part of the Act curtails the use of automated dialers and prerecorded messages to cell phones, whose subscribers often are billed by the minute as soon as the call is answered--and routing a call to voicemail counts as answering the call. An automated call to a landline phone can be an annoyance; an automated call to a cell phone adds expense to annoyance.

*Soppet v. Enhanced Recovery Co., LLC, 679 F.3d 637, 638 (7th Cir. 2012)*

35.     As the Court unanimously held in *Haines v. Kerner*, 404 U.S. 519 (1972), a pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Id., at 520-521, quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)." *Estelle v. Gamble* (1976) 429 U.S. 97, 106 [97 S.Ct. 285, 292, 50 L.Ed.2d 251, 261].

## V. STANDING

36.     The court must evaluate lack of statutory standing under the Rule 12(b)(6) standard. *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).  However, because Plaintiff is proceeding pro se, his complaint "must be held to less stringent standards than formal pleadings drafted by lawyers" and must be "liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (reaffirming standard reviewing pro se complaints post-*Twombly*). The Ninth Circuit has concluded that the court's treatment of pro se filings after *Twombly* and *Iqbal* remain the same and pro se pleadings must continue to be liberally construed. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010); see also *McGowan v. Hulick*, 612 F.3d 636, 640-42 (7th Cir. 2010); *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461-62 (5th Cir. 2010); *Harris v. Mills*, 572 F.3d 66, 71-72 (2d Cir. 2009) (noting

that even following *Twombly* and *Iqbal*, "we remain obligated to construe a pro se complaint liberally").

37.    Standing is proper under Article III of the Constitution of the United States of America because Plaintiff's claims state:

    A. A valid injury in fact;

    B. which is traceable to the conduct of Defendants;

    C. and is likely to be redressed by a favorable judicial decision.  See, *Spokeo, Inc. v. Robins*, 578 U.S.____(2016) at 6, and *Lujan v. Defenders of Wildlife*, 504 U.S. 555 at 560.  In order to meet the standard laid out in *Spokeo* and *Lujan*, Plaintiff must clearly allege facts demonstrating all three prongs above.

**The "Injury in Fact" Prong.**

38.    Plaintiff's injury in fact, must be both "concrete" and "particularized" in order to satisfy the requirements of Article III of the Constitution, as laid out in *Spokeo (*Id.). For an injury to be "concrete," it must be a de facto injury, meaning that it actually exists.  In the present case, Plaintiff was called on his cellular phone at least fifteen (15) times by Defendants, most from Raja as directed by Brown, as directed by McKinney, as directed by Budd, who was paid by Baker to do so.  In fact, Plaintiff expressly informed Defendants and their agents to cease and desist from all future telemarketing on the very first call.  Such calls are a nuisance, an

invasion of privacy, and an expense to Plaintiff in multiple ways. *Soppet v.*

*Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012). Defendant's

invasion of Plaintiff's right to privacy is further exacerbated by the fact that

Plaintiff's phone number, at all times relevant to this litigation, was on the National

Do-Not-Call Registry ( hereinafter, "DNC Registry"). As well, Plaintiff had no

prior business relationship with Defendants Baker, Budd, McKinney and Powur

prior to receiving the seriously harassing and annoying calls as well as the

extortionate threats by Budd.   All of Plaintiff's injuries are concrete and de facto.

For an injury to be "particularized" means that the injury must "affect the plaintiff

in a personal and individual way." *Spokeo, Inc. v. Robins,* 135 S.Ct. 1540, *578 U.S.*

___ *(2016)* at 14.   In the instant case, it was Plaintiff's phone that was called and it

was Plaintiff who answered the calls. It was Plaintiff's personal privacy and peace

that was invaded by Defendant's persistent phone calls using an ATDS and a pre-

recoded message, despite Plaintiff having no prior business relationship with

Defendants and Plaintiff's attempt to avoid the damage by registering his number

on the DNC Registry.  Additionally, Plaintiff Ewing has a clear warning on each

and every page of his web domain that warns offenders that if you call, you will be

sued.  In fact, Ewing had to remove his own phone number from his web page

several years ago (please go ahead and verify this on the waybackmachine[1]) due

---

[1] Exact copy of web page in 2015:
https://web.archive.org/web/20151109045712/http://www.antonewing.com:80/contact

18CV

the incessant, annoying and harassing calls by scam telemarketers like these defendants. Moreover, a simple Google search of Ewing's phone number will yield page after page of warnings that threaten a civil suit if you call. Ewing's number is in the dnc.com known litigator software that could have been used for $230 per month (must less than the $16,000 per year charged by the FTC). And, Ewing has sent out hundreds of emails to TCPA defense attorneys nationwide warning them that if their clients call Ewing's phone, they will be sued. Finally, Plaintiff is responsible to pay the bill on his cellular phone, and to pay the bill for the electric utility company kilowatt-hour power usage to recharge it. All of these injuries are particularized and specific to Plaintiff and will be the same injuries suffered by Plaintiff.

**The "Traceable to the Conduct of Defendants" Prong**

39.     The second prong required to establish standing at the pleadings phase is that Plaintiff must allege facts to show that their injury is traceable to the conduct of Defendants. In the instant case, this prong is met by the fact that the calls to Plaintiff's cellular phone and home phone (land line) were placed either by Defendants directly, or by Defendants' agent at the express direction and control of

Defendants.   See *Jones v. Royal Admin. Servs., 866 F.3d 1100 (9th Cir. 2017)* ten factor test[2] from the 9th Circuit and Civil code §2307.

**The "Injury is Likely to be Redressed by a Favorable Judicial Opinion" Prong**

40.     The third prong to establish standing at the pleadings phase requires Plaintiff to allege facts to show that the injury is likely to be redressed by a favorable judicial opinion. In the present case, Plaintiff's Prayers for Relief includes a request for damages for each call made by Defendants, as authorized by statute in 47 U.S.C. § 227. The statutory damages were set by Congress and specifically redress the financial damages suffered by Plaintiff.  Furthermore, Plaintiff's Prayers for Relief request injunctive relief to restrain Defendants from the alleged abusive practices in the future. The award of monetary damages and the order for injunctive relief redress the injuries of the past and prevent further injury in the future. Because all standing requirements of Article III of the U.S. Constitution have been met, as laid out in *Spokeo, Inc. v. Robins*, 578 U.S. ___ (2016), Plaintiff has standing to sue Defendants on the stated claims.

---

[2]  1) the control exerted by the employer, 2) whether the one employed is engaged in a distinct occupation, 3) whether the work is normally done under the supervision of an employer, 4) the skill required, 5) whether the employer supplies tools and instrumentalities [and the place of work], 6) the length of time employed, 7) whether payment is by time or by the job, 8) whether the work is in the regular business of the employer, 9) the subjective intent of the parties, and 10) whether the employer is or is not in business.

PLAINTIFF'S COMPLAINT FOR VIOLATIONS UNDER TCPA - 19

41.   "...[C]ourts in the Ninth Circuit have held that "allegations of nuisance and invasions of privacy in TCPA actions are concrete" injuries that establish standing. See *Mbazomo v. ETourandtravel, Inc.*, 16-CV-2229-SB, 2016 U.S. Dist. LEXIS 170186, 2016 WL 7165693, at *2 (E.D. Cal. Dec. 8, 2016).  In *Mbazamo*, the court held that a violation of the TCPA represents a concrete injury because "[t]he history of sustaining claims against both unwelcome intrusion into a plaintiff's seclusion and unceasing debt-collector harassment are squarely 'harm[s] that [have] traditionally been regarded as providing a basis for a lawsuit.'" Mbazomo, 2016 U.S. Dist. LEXIS 170186, 2016 WL 7165693, at *2 (quoting *Spokeo*, 136 S.Ct. at 1549-50). The court declined to follow Romero, explaining that Romero "improperly erodes the pleading standard set under Fed. R. Civ. P. 8(a) . . . . A plaintiff [need only] plausibly tie the alleged acts of the defendant to the alleged harms suffered." Id.  *Messerlian v. Rentokil N. Am., Inc.* (C.D.Cal. Dec. 15, 2016, No. CV 16-6941-GW (GJSx)) 2016 U.S.Dist.LEXIS 175224, at *7-8.

42.   "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*. at 1548 (quoting *Lujan*, 504 U.S. at 560). The Supreme Court noted that concreteness is quite distinct from particularization. *Id*. An injury is "particularized" if it affects "the plaintiff in a personal and individual way." *Id*. In addition, for an injury to be

"concrete", it must be "de facto," meaning that it is "real" and not "abstract." *Id.* However, an injury need not be "tangible" in order to be "concrete," and intangible injuries may constitute injury in fact. *Id.* at 1549. In order to determine whether an intangible harm constitutes injury in fact, *Spokeo* provided two factors to be considered: "history and the judgment of Congress." *Id.* at 1549. Specifically, "(1) whether the statutory violation bears a 'close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts,' and (2) congressional judgment in establishing the statutory right, including whether the statutory right is substantive or procedural." *Matera v. Google*, No. 15cv 4062-LHK, 2016 WL 5339806, at *9 (N.D. Cal. Sept. 23, 2016). *Spokeo* also held that "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact." *Spokeo*, 136 S. Ct. at 1549. In such a case, a plaintiff "need not allege any additional harm beyond the one [the legislature] has identified." *Id.*

43.     The TCPA provides a private right of action for violations of § 227(b) and the associated regulations. 47 U.S.C. § 227(b)(3). Subsection (b) prohibits calls (other than for an emergency) to a telephone number assigned to a cellphone by way of an automatic telephone dialing system ("ATDS") without the prior express consent of the called party. 47 U.S.C. § 227(b)(1)(A)(iii). In the Ninth Circuit, a plaintiff must show: (1) "the defendant called a cellular telephone number; (2)

"using an automatic telephone dialing system; (3) without the recipient's prior express consent." *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012).  A plaintiff must also be a "called party" within the definition of the TCPA. *Charkchyan v. EZ Capital*, No. 2:14-cv-03564-ODW (ASx), 2015 U.S. Dist. LEXIS 76560, 2015 WL 3660315, at *3 (C.D. Cal. June 11, 2015)

44.     First, a text message and a prerecorded robotic voice message call are both a "call" for purposes of the TCPA. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952-54 (9th Cir. 2009).  Plaintiff will propound discovery, including requests for production of documents that will support these allegations with activity logs in 2018 documenting the calls. This element is satisfied.

45.     Second, Plaintiff adequately pleads use of an automatic telephone dialing system ("ATDS").  The TCPA defines ATDS to mean "equipment which has the capacity — (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). The focus of the inquiry is on the equipment's *capacity* to perform this function. *See Satterfield*, 569 F.3d at 951.  "Accordingly, a system need not actually store, produce, or call randomly or sequentially generated telephone numbers, it need only have the capacity to do it." *Id.* Defendants called with a prerecorded message from Pakistan, which, by definition requires an auto-dialer that operates without human intervention.

46.    "In proving a defendant's use of [an] ATDS under the TCPA, courts have recognized the difficulty a plaintiff faces in knowing the type of calling system the defendant used without the benefit of discovery." *Charkchyan,* 2015 U.S. Dist. LEXIS 76560, 2015 WL 3660315 at *3.  For example, in *Charkchyan,* the plaintiff's allegations supported the use of an ATDS. *Id.*  In that case, the plaintiff described the messages received "as being formatted in SMS short code, '670-76,'" and as being impersonally scripted. *Id.*  This was enough to establish the defendant used an ATDS. *Id.*   Similarly, in *Kramer v. Autobytel,* the plaintiff alleged sufficient facts to support a reasonable inference that the defendants used an ATDS: "[The plaintiff] described the messages from SMS short code 77893, a code registered to [a defendant]. The messages were advertisements written in an impersonal manner. [And,] [the plaintiff] had no other reason to be in contact with the Defendants." 759 F. Supp. 2d 1165, 1171 (N.D. Cal. 2010). In contrast, the plaintiff in *Williams v. T-Mobile USA, Inc.* failed to plead more than "legal conclusions couched in fact" when asserting the "barrage of calls and . . . frequency and pattern of the calls provide[d] the necessary factual support." No. 15-cv-3384-JSW, 2015 U.S. Dist. LEXIS 140077, 2015 WL 5962270, at *2-3 (N.D. Cal. Oct. 14, 2015). *See also Daniels v. ComUnity Lending, Inc.,* No. 13cv488-WQH-JMA, 2014 U.S. Dist. LEXIS 1606, 2014 WL 51275, at *5 (S.D.

Cal. Jan. 6, 2014) (ATDS use not plausible because the allegations indicated the defendants directed calls specifically towards the plaintiff).

47.     Here, Plaintiff alleges that Defendants (Budd, Baker, McKinney, Powur) contacted him using a "telephone dialing system." This is insufficient standing alone, but as in *Charkchyan* and *Kramer*, Plaintiff alleges sufficient additional facts. First, each of the calls are available to the Court as audio recordings of the robotic voice message that initiated the calls. Second, the calls are impersonal advertisements: they do not address Plaintiff personally and they advertise Defendant's product. Third, Plaintiff declares that he has never heard of Defendants, visited any location operated by Defendants prior to the harassing and annoying calls, nor provided his cellular telephone numbers to Defendants or consented to receive calls from Defendants. Plaintiff also has had no prior business relationship with Defendants. Plaintiff had no reason to be in contact with Defendants nor have they ever purchased any kind of product or service. Plaintiff's allegations are sufficient to establish that Defendants used ATDS in sending their prerecorded solicitation messages.

48.     Third, Plaintiff adequately pleads that the conduct was without his prior express consent. "Prior express consent" under the TCPA is "consent that is clearly and unmistakably stated." *Satterfield*, 569 F.3d at 955; *Charkchyan*, 2015 U.S. Dist. LEXIS 76560, 2015 WL 3660315 at *3. Moreover, "[t]he Federal

Communications Commission ('FCC'), tasked with instituting implementing regulations for the TCPA, added an express *written* consent requirement in the case of messages that 'include[] or introduce[] an advertisement or constitute[] telemarketing.'" *Meyer v. Bebe Stores, Inc.*, No. 14-cv-00267-YGR, 2015 U.S. Dist. LEXIS 12060, 2015 WL 431148, at *3 (N.D. Cal. Feb. 2, 2015) (citing 47 C.F.R. § 64.1200(a)(2)). An "advertisement" includes "any material advertising the commercial availability or quality of any property, goods, or services." 47 C.F.R. § 64.1200(f)(1). "Telemarketing" means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." *Id.* § 64.1200(f)(12). Establishing prior express consent of the called party "is an affirmative defense for which the defendant bears the burden of proof." *Charkchyan*, 2015 U.S. Dist. LEXIS 76560, 2015 WL 3660315 at *3.

49.     In *Charkchyan*, the plaintiff did not give prior express consent. *Id.* There, the plaintiff claimed: "(1) he [was] the current subscriber to the cellular telephone at issue; (2) he [had] never heard of [the defendant]; (3) he [had] never visited any location operated by [the defendant]; and (4) he [had] never provided his cellular number to [the defendant], nor consented to receiving calls from [the defendant]." *Id.* Where the defendant failed to provide any conflicting evidence, this was sufficient. *Id.*

50.     Similarly, in Plaintiff's case, the allegations establish that he did not give prior express consent.  He declared that he was "the regular user and subscriber to the cellular telephone number at issue."  He also declared that he has "never heard of [Defendants], visited any location operated by [Defendants], provided [his] cellular telephone number to [Defendants,] or consented to receive text messages from [Defendants]."  As in *Charkchyan*, these allegations are sufficient to support Plaintiff's claims that he did not give prior express consent authorizing Defendants to send the prerecorded messages. Furthermore, the calls promote the sender's illegal solar panel business and fall within the FCC's definition of an advertisement and/or telemarketing. Thus, express written consent was required, and there is no evidence of such. This element is consequently satisfied.

51.     Fourth, Plaintiff sufficiently pleads that he was the "called party." To have standing under the TCPA, a plaintiff must be the "called party." *See Charkchyan*, 2015 U.S. Dist. LEXIS 76560, 2015 WL 3660315 at *3, *4; 47 U.S.C. § 227(b)(1)(A). A telephone service subscriber is the "called party" within the meaning of the TCPA. *Charkchyan*, 2015 U.S. Dist. LEXIS 76560, 2015 WL 3660315 at *3; *Gutierrez v. Barclays Group*, No. 10cv1012 DMS (BGS), 2011 U.S. Dist. LEXIS 12546, 2011 WL 579238, at *4 (S.D. Cal. Feb. 9, 2011). Here, Plaintiff declares that he was "the regular user and subscriber to the cellular phone number" that received the calls and messages.  Plaintiff is therefore the "called

party." *See Charkchyan*, 2015 U.S. Dist. LEXIS 76560, 2015 WL 3660315 at *3.

*Drew v. Defendants Consumer Advocacy, LLC*, No. 16-cv-00200-LB, 2016 U.S.

Dist. LEXIS 52385, at *11-16 (N.D. Cal. Apr. 18, 2016)

## VI. FACTUAL ALLEGATIONS

### A. Powur, PBC

52.     One of Powur, PBC's strategies for marketing its services is placing

telemarketing robocalls to those who have not consented to receive such

solicitations, including Plaintiff.

53.     Plaintiff's investigation has discovered that Powur, PBC and its Pakistan

agent uses equipment that has the capacity to store or produce random or

sequential telephone numbers to be called and that includes autodialers and

predictive dialers (each an "automatic telephone dialing system" or "ATDS").

54.     NB Baker Electric, Inc. pays commissions to Powur, PBC, Budd and

McKinney.  Brown is the marketing agent for BUDD and Powur.  Powur

knowingly advertises for BUDD.  Each Defendant knows of and is aware of each

of the other Defendant's duties, responsibilities and function within the

telemarketing operation.  Each Defendant is a co-conspirator with each other

Defendant in this matter.  They all know each other, they all talk to eachother.

They have all designed, planned and orchestrated the telemarketing scheme and

scam together.

**B. Plaintiff**

55.    Plaintiff Anton Ewing is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

**C. Telephone number 619-719-9640**

56.    A phone number beginning 619-719-9640 is registered to Mr. Ewing.

57.    619-719-9640 is on the National Do Not Call Registry.

58.    619-987-2016 is registered to a residential telephone service.

59.    Mr. Ewing answers calls made to 619-719-9640 and 619-987-2016.

60.    Mr. Ewing pays the phone bills for 619-719-9640 and 619-987-2016.

**F. Powur, PBC's Illegal Telemarketing Robocalls to Plaintiff**

61.    On December 12, 2018, a call to 619-719-9640, which is Mr. Ewing's cellular telephone, caused his cell phone to ring. Mr. Ewing picked up. The person on the other end wasn't anyone Mr. Ewing knew.  In fact, it wasn't a person at all; it was a prerecorded voice and then Raja can on the line.

62.    Plaintiff has never heard of NB Baker Electric, Inc., Brown, McKinney, Budd or Powur, PBC and had not given them permission to call him, let alone with a telemarketing robocall. Mr. Ewing was surprised and frustrated to be interrupted by a prerecorded solicitation to a phone number that had long been on the National Do No Call Registry.

18CV

63.     It didn't stop there. *Powur, PBC placed at least 10 more telemarketing robocalls to Mr. Ewing after Raja.* The call on December 12, 2018 came from 509-528-3496 which turns out to be Brown's phone number. The agent on the phone said he was with "Powur." The agent said his name was Dave Brown on the second call and he said that Raja from Pakistan was the source of the lead. Plaintiff recorded this annoying, harassing and PC §653m-violating call and will play it for the Court.

64.     Most of these robocalls used a prerecorded or artificial voice, while the rest were marked by an unnatural click or pause at the beginning—signaling to Mr. Ewing that the call was placed by an ATDS rather than manually dialed by a person.

65.     More than a dozen of Powur, PBC's telemarketing robocalls were made to Mr. Ewing while he was in California, in this District.

66.     More than a dozen of Powur, PBC's telemarketing robocalls were made to Mr. Ewing after Powur, PBC knew of his desire to never been solicited via telemarketing calls, which is publicly known in this District.

67.     Mr. Ewing repeatedly asked Powur, PBC to stop calling.

68.     Due to the massive volume of robocalls made by Defendant Powur, PBC to Ewing, Plaintiff's investigation into the calls and their illegal features (e.g.,

18CV

prerecorded voices and placement by an ATDS, as manifested by beginning with an unnatural click or pause) is ongoing.

## VII. FIRST CLAIM FOR RELIEF

### (Non-Emergency Robocalls to Cellular Telephones, 47 U.S.C. § 227(b)(1)(A))

69.     Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

70.     The foregoing acts and omissions of Powur, PBC and its affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making non-emergency telemarketing robocalls to the cellular telephone numbers of Plaintiff without prior express written consent.

71.     McKinney, Budd, and NB Baker Electric, Inc. are affiliates and agents of Powur, PBC.  Budd uses Powur as his alter ego and  does not conduct annual meetings, does not have a separate bank account from that of his personal account and he is the sole shareholder, sole director and sole officer as of the date of filing this lawsuit.

72.     Each named defendant in this matter is vicariously liable for the acts and actions of each of the other named defendants under the *Gomez* case from the US Supreme Court handed down on January 20, 2016.  NB Baker Electric, Inc controls, regulates and governs every detail and every aspect of Powur's business and marketing.

73.   Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(b)(3)(B).

74.   Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(b)(3).

75.   Plaintiff also seek a permanent injunction prohibiting Powur, PBC and NB Baker Electric and its affiliates and agents from making non-emergency telemarketing robocalls to cellular telephone numbers without prior express written consent of the called party.

**VIII. SECOND CLAIM FOR RELIEF**

**(Non-Emergency Robocalls to Residential Telephones, 47 U.S.C. § 227(b)(1)(B))**

76.   Mr. Ewing realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

77.   The foregoing acts and omissions of Powur, PBC and/or its affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(B), by making non-emergency prerecorded telemarketing calls to the residential telephone 619-987-2016 number of Mr. Ewing without prior express written consent.

78.   McKinney, Budd, and NB Baker Electric, Inc. are affiliates and agents of Powur, PBC.

79.   Mr. Ewing is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(b)(3)(B).

18CV

80.     Mr. Ewing is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(b)(3).

81.     Mr. Ewing also seeks a permanent injunction prohibiting Powur, PBC and NB Baker Electric and its affiliates and agents from making non-emergency prerecorded telemarketing calls to residential telephone numbers without prior express written consent of the called party.

## IX. THIRD CLAIM FOR RELIEF

**(Telemarketing Solicitations to National Do Not Call Registrants, 47 U.S.C. § 227(c))**

82.     Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

83.     The foregoing acts and omissions of Powur, PBC and/or its affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(c), by making telemarketing solicitations to residential and wireless telephone numbers listed on the Federal Government's National Do Not Call Registry. 47 C.F.R. §64.1200(c)(2).

84.     McKinney, Budd, and NB Baker Electric, Inc. are affiliates and agents of Powur, PBC.

85.     Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

18CV

86.     Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

87.     Plaintiff also seeks a permanent injunction prohibiting Powur, PBC and its affiliates and agents from making telemarketing solicitations to residential and wireless telephone numbers listed on the Federal Government's National Do Not Call Registry.

## XI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against all Defendants, jointly and severally, as follows:

A. Leave to amend this Complaint to conform to the evidence presented at trial;

B. A declaration that actions complained of herein by Powur, PBC, Budd, McKinney and NB Baker Electric, Inc violate the TCPA, CIPA and the UCL;

C. An order enjoining Powur, PBC, Budd, McKinney and NB Baker Electric, Inc and its affiliates and agents from engaging in the unlawful conduct set forth herein, including violation of 47 USC §501;

D. An award to Plaintiff of damages, as allowed by law under the TCPA, and not limited to the calls listed above;

18CV

E. For statutory damages in the amount of $5,000 per violation pursuant to California Penal Code §637.2(a)(1) or, if greater, three times actual damages as provided in California Penal Code §637.2(a)(2);

F. $500 plus threefold damages for intentional, knowing or willful violation of the Do-Not-Call Registry for each and every call;

G. For punitive damages in an amount to be determined with exactness at trial herein;

H. For a preliminary and permanent injunction to restrain further violations of the CIPA, pursuant to California Penal Code §637.2(b);

I. For the payment of reasonable attorneys' fees and costs of suit incurred herein under all applicable statutes and rules including under Cal. Civ. Proc. Code §1021.5 for attorneys that have been or will be hired;

J. For an injunction prohibiting all Defendants from ever contacting Plaintiff ever again in any manner whatsoever, including spam texting, robodialing, and spam emailing;

K. $1,500 for each violation of 16 CFR §610.4(b)(iii)(B) initiating a call to a DNC registered number;

L. $1,500 for each violation of 47 CFR §64.1601(3) caller ID spoofing;

M. $1,500 for each violation of 47 CFR §64.1200(d)(1) failure to provide copy of written do not call policy;

N. $1,500 for each violation of 47 CFR §64.1200(b)(1) failure to state name of

business at beginning of call;

O. $1,500 for each violation of 47 USC §227(b)(1)(A)(iii) willful or knowing

call to cellular phone;

P.  $1,500 for each violation of 47 USC §227(b)(1) for using an ATDS;

Q. $1,500 for each violation of 47 USC §227(c) and (d) for calling a phone

number on the DNC registry; and

R. For any other relief that the Court deems just and proper.

## XI. DEMAND FOR JURY

Plaintiff demands a trial by jury for all issues so triable.

Dated:  December 15, 2018

/S/ Anton Ewing
Anton Ewing, Plaintiff

18CV

# EXHIBIT A

Delaware.gov

Governor | General Assembly | Courts | Elected Officials | State Agencies

---

Department of State: Division of Corporations

Allowable Characters

| HOME | | | Entity Details | |
|------|---|---|---|---|
| About Agency | | | | |
| Secretary's Letter | | | | |
| Newsroom | | | THIS IS NOT A STATEMENT OF GOOD STANDING | |
| Frequent Questions | | | | |
| Related Links | | | | |
| Contact Us | File Number: | 5458732 | Incorporation Date / 1/2/2014 | |
| Office Location | | | Formation Date:  (mm/dd/yyyy) | |
| **SERVICES** | Entity Name: | POWUR, PBC | | |
| Pay Taxes | | | | |
| File UCC's | Entity Kind: | Corporation | Entity Type:  Benefit Corporation | |
| Delaware Laws Online | | | | |
| Name Reservation | Residency: | Domestic | State:  DELAWARE | |
| Entity Search | | | | |
| Status | | | | |
| Validate Certificate | | | | |
| Customer Service Survey | REGISTERED AGENT INFORMATION | | | |
| **INFORMATION** | | | | |
| Corporate Forms | | | | |
| Corporate Fees | Name: | THE COMPANY CORPORATION | | |
| UCC Forms and Fees | | | | |
| Taxes | Address: | 251 LITTLE FALLS DRIVE | | |
| Expedited Services | | | | |
| Service of Process | City: | WILMINGTON | County:  New Castle | |
| Registered Agents | | | | |
| Get Corporate Status | State: | DE | Postal Code:  19808 | |
| Submitting a Request | | | | |
| How to Form a New Business Entity | Phone: | 302-636-5440 | | |
| Certifications, Apostilles & Authentication of Documents | | | | |

Additional information is available for a fee. You can retrieve Status for a fee of $10.00 or
more detailed information including current franchise tax assessment, current filing history
and more for a fee of $20.00.

Would you like ⦿ Status ◯ Status, Tax & History Information

[ Submit ]

[ View Search Results ]     [ New Entity Search ]

For help on a particular field click on the Field Tag to take you to the help area.

site map  |  privacy  |  about this site  |  contact us  |  translate  |  delaware.gov

# EXHIBIT B



in  Q Search

Home  My Network  Jobs  Messaging  Notifications  Me ▾  |  Work  Recruiter

CEO, VP Job Search $200K+ - Get in Front of The Decision Makers - Confidentially. We Do The Work.  Ad  •••

**Promoted**  •••



**A Board Position for You**
These companies need board members. Click here to be matched with them.

Learn more

**Unsecured Business Loans**
Get $5K – $600K0 Fast & Easy Loans. Require $100K Yearly Gross For Approval

Learn more

## Jonathan Budd · 2nd

Founder, CEO at Powur, PBC

Greater San Diego Area

Connect    View in Recruiter    More...

Powur, PBC

Hofstra University

See contact info

500+ connections

Jonathan Budd is committed to "creating a world that works for all life" and to leaving "a better world than we found" for future generations. He fulfills this mission in his daily life and through leadership of several game-changing organizations. After earning his bachelor's degree in psychology, Jonathan turn...

Show more ⌄

### People Also Viewed


**Robert Smith** · 2nd
VP Sales and Marketing at Powur

**Cheri Witko** · 3rd
Office manager

**Elton Fletcher**
Freight Team/Lift truck Operator/ Decore Specialist at Home Depot of West Branson, MO


**Robert Styler** · 2nd
Founder at SunCrew

**rachel labruzzo**
Independent Distributor at Enagic


**Mikaila Locsin** · 3rd
Advanced Reiki Practitioner and Solar Power Consultant

**Stefanie Fario** · 3rd
Speaker & Practice Consultant at Practice 180


**Charles Thompson** · 2nd
Presidential Director - Field Leadership Team, Powur at Powur, PBC


**Hector Mendoza** · 3rd
Baker Electric Solar


**Corey R Jackson** · 2nd
CEO & Owner at Corey R Jackson Renewables

## Highlights

**3 Mutual Connections**
You and Jonathan both know Cheryl Angela, Erin Hanley "Real Estate 4 Active Lifestyles", and 1 other

## Experience

**Founder, CEO**
Powur, PBC
Jan 2014 – Present · 5 yrs

Jonathan heads up day-to-day operations and strategy that allow Powur's entrepreneurs to succeed at their finest. From forming key strategic partnerships, attracting the best talent, and innovating how solar is sold…Jonathan has his hands in everything Powur.

**Founder**
MyStand Inc.
2012 – Present · 6 yrs

Starting MyStand was a natural extension of Jonathan's passion for environmental sustainability and personal/community development, or as he puts it; "The universe is my boss, and I listened when it gave me a job." In his daily life, Jonathan believes in "putting my money where my values are, and living as sustainable a life as I can."

**President**
Global Transformation Council Inc
2011 – Present · 7 yrs

The sole purpose of the Global Transformation Council is to support charitable organizations that are helping to improve humankind and are making great transformational impact through innovative solutions to many of our world's most challenging problems. The Foundation focuses on four key priorities: The Environment, Human Well Being, Emotional/Mental Health, and S... See more

**CEO/President**
Empowered Entrepreneurs Inc.
Jul 2007 – Present · 11 yrs 6 mos

The mission behind Empowered Entrepreneurs is to EMPOWER others by providing the most innovative knowledge, life skills and technical skills currently existing on our planet to create ABUNDANCE in all areas. The company is driven to help our partners develop the mindset and means to achieve personal and financial freedom, to realize their highest gifts they can ... See more

**Founder**
Futuristic Marketing, LLC
2012 – 2014 · 2 yrs

As founder and visionary, Jonathan drives the company's mission is to share wisdom, teachings and tools that will empower online entrepreneurs of all shapes and sizes to build their businesses and achieve personal fulfillment and success. Futuristic Marketing offer the most cutting-edge internet marketing trainings and state-of-the-art tools.

## Education

**Hofstra University**
Bachelors, Pyschology
2002 – 2006

**Promoted**  •••


**Jenkins Enterprise Trial**
No Obligations, No Credit Card. Get Started Today with a Free Trial.
Learn more

**Are You A Director?**
Grow Your Network. Apply Now To Join An Elite Professional Community.
Learn more

**Optimize for Success**
Ensure that your business is well positioned for its digital journey.
Learn more

Ryan Lipsey    |    Messaging

# EXHIBIT C

M Gmail

Doe John <sddronevideos@gmail.com>

**Congratulations, your free solar proposal is on the way**
1 message

Powur <noreply@powur.com>
To: Anthony Stark <sddronevideos@gmail.com>

Wed, Dec 12, 2018 at 2:07 PM

 powur

Congratulations! Your home has successfully been submitted to Powur PBC
by David Brown for a free consultation to determine if your home is a good
fit for *cheaper, cleaner, solar energy.*

**Here's what you can expect next...**

1. David will set up a call with you to speak with an energy specialist at
   Powur PBC to determine if your home is a good fit for solar.
2. If going solar is an option for your home, Powur PBC will prepare a
   custom proposal for you and will set up a time to review the
   proposal and how you can save *money* on your energy bills *without
   it costing anything upfront.*

For your convenience, you can manage your appointment times and track
your progress with Powur PBC by clicking here.

Solar today has honestly never been easier. With free installation, no upfront costs,
and lower electric bills... it just makes sense. What's better, when you go solar, Powur
PBC handles all the work on your behalf.

Thanks for giving us an opportunity to serve you. We're on a mission to power
millions of homes by pure sunshine. and create a cleaner, brighter future for life on
this planet. And it's even better when that means real cash savings for you!

Yours Truly,

Jonathan Budd
CEO, Powur
P.S. If you've ever wondered how solar can "save you money"... you're not alone.
Many people have asked us this same question and this video may help explain how.

To unsubscribe from future emails click here.