Anton Ewing
3077 B Clairemont Drive #372
San Diego, CA 92117
(619) 719-9640
anton@antonewing.com

Plaintiff in Pro Per

FILED

JAN 17 2019

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY    MME    DEPUTY

# THE UNITED STATES FEDERAL DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

Anton Ewing, an individual,

         Plaintiff,

       vs.

Powur, PBC, a Delaware public benefit
corporation;
Jonathan Gregory Budd, an individual;
Larry McKinney, an individual;
NB Baker Electric, Inc., a California
corporation;

        Defendants.

Civil Case No. 18-CV-2843-LAB-JLB

**FIRST AMENDED COMPLAINT**

**TCPA 47 USC §227(b)(1)(A)**
**TCPA 47 USC §227(c)(5)**
**CIPA PC §637.2 and §637.2**

Pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), may it please the

Court, Plaintiff Anton Ewing (herein "Plaintiff" or "Ewing"), for this FIRST

AMENDED COMPLAINT against Defendants Powur, PBC and its present,

PLAINTIFF'S FIRST AMENDED COMPLAINT FOR VIOLATIONS UNDER TCPA - 1

18CV2843

former and future direct and indirect parent companies, subsidiaries, affiliates and agents ("Powur, PBC"), JONATHAN GREGORY BUDD, an individual and officer of Powur, PBC ("Budd"), Larry McKinney, an individual, employee and agent of Powur, PBC ("McKinney"), and NB Baker Electric, Inc., a California corporation doing business as Baker Electric Home Energy ("Baker"), alleges as follows:

## I.    INTRODUCTION

1.    Raja from Pakistan is an employee of Powur.  David Brown is an employee of Powur.  Powur pays Raja and David Brown salary and wages for telemarketing on behalf of Powur.  Budd ordered, directed and instructed Raja and David Brown to telemarket, call and solicit Plaintiff Ewing.

2.    David Brown stated on the phone that he was an employee of Powur and that McKinney was also an employee of Powur.  David Brown said that Raja sent over Ewing's information.

3.    McKinney called Plaintiff to go over the report he created after reviewing the electric bills of Plaintiff, which were sent to him from his fellow employee David Brown.

4.    David Brown called Plaintiff Ewing's cell phone (619-719-9640) from his Powur phone (509-528-3496) on December 12, 2018 at 10:51 AM.

5.     David Brown called Plaintiff Ewing's cell phone (619-719-9640) from his Powur phone (509-528-3496) on December 12, 2018 at 2:08 PM, and he then conferenced in McKinney.

6.     David Brown called Plaintiff Ewing's cell phone (619-719-9640) from his Powur phone (509-528-3496) on December 13, 2018 at 9:22 AM.

7.     On December 12, 2018, at 2:08 PM, David Brown sent a text message from 509-528-3496 to 619-719-9640.   Plaintiff did not give Brown permission to send a text solicitation messages.  The message stated "Hi Tony! Dave Brown here.  I just tried to call ya.  Please give me a call back or let me know the best time to reach you and I will call you then."

8.     On December 13, 2018 at 12:28 PM, David Brown sent a text message from 509-528-3496 to 619-719-9640.  Plaintiff did not give Brown permission to send a text solicitation messages.

9.     Budd required Brown and Raja to record the calls made to Plaintiff in order to get paid.  No recording meant no payment from Powur's checking account for the telemarketing work done by Raja and Brown.

10.     California PC §632.7 states "[e]very person who, without the consent of all parties to a communication, intercepts or receives and intentionally records, or assists in the interception or reception and intentional recordation of, a communication transmitted between two cellular radio telephones, a cellular radio

PLAINTIFF'S FIRST AMENDED COMPLAINT FOR VIOLATIONS UNDER TCPA - 3

18CV2843

telephone and a landline telephone, two cordless telephones, a cordless telephone and a landline telephone, or a cordless telephone and a cellular radio telephone…"

11.    Powur called Plaintiff through employee Brown and recorded said call without disclosing that they were recording the call to Plaintiff.

12.    The exhibits attached to this FAC are hereby incorporated by this reference as if fully set forth herein and they are true, correct and accurate copies of the originals.

13.    NB Baker hired, paid and contracted with Powur to have Powur and its employees call, solicit and telemarket Ewing.

14.    Ewing spoke with a Baker Electric employee who confirmed that Baker works with and hires Powur to conduct its telemarketing operations, including the calls made to Plaintiff to sell solar panels.

15.    Defendant Budd wrote the exact script that David Brown and Raja were required to use when calling Plaintiff.  Budd required the script to be followed in order for Raja and Brown to get paid that salary and payroll.

16.    Budd controlled, authorized and intimately knew about the calls that Brown and Raja made to Plaintiff to sell solar panels on behalf of Baker.

17.    Budd signed the hiring contract with Brown and with Baker.

18.    Powur has paid David Brown and Raja for telemarketing and illegal calling of DNC protected telephone numbers, including Plaintiff's cell phone.

18CV2843

19.     Powur is liable for the telemarketing acts of its employees, Raja and Brown.

Budd is liable for his corporation's illegal telemarketing acts because he directly

and expressly ordered the employees of Powur to make the illegal calls.  Budd

purchase the database of phone numbers and ordered Brown and Raja to call those

DNC protected phone numbers, including Plaintiff's.

20.     The TCPA causes of action (47 USC §227(b) and (c)) filed herein for, *inter*

*alia*, illegal telemarketing to Plaintiff's DNC registered cellular phone and home

phone through the use of an ATDS is expressly alleged against Defendants Powur,

PBC and its present, former and future direct and indirect parent companies,

subsidiaries, affiliates and agents, JONATHAN GREGORY BUDD, an individual

and officer of Powur, PBC, Larry McKinney, an individual, and NB Baker

Electric, Inc., doing business as Baker Electric Home Energy.

21.     The CIPA cause of action (PC §§§632, 637.2, 632.7) filed herein for illegal

recording of the telemarketing call to Plaintiff's phone without disclosure of the

recording is alleged against Defendants Powur, PBC and its present, former and

future direct and indirect parent companies, subsidiaries, affiliates and agents,

JONATHAN GREGORY BUDD, an individual and officer of Powur, PBC, Larry

McKinney, an individual, and NB Baker Electric, Inc. doing business as Baker

Electric Home Energy.

22.     <u>Nature of Action</u>. Something is rotten in Pakistan, to wit: Powur, PBC and

18CV2843

NB Baker Electric, Inc., working together and in concert, conspiring with its agents and employees, have been bombarding Mr. Ewing, without his consent, with autodialed and prerecorded calls ("robocalls") as well as "live-transfer" calls using an ATDS at defined by the 9th Circuit in the *Marks vs. Crunch* case.. Mr. Ewing begged Powur, PBC and NB Baker Electric, Inc. to stop these illegal calls, but since then, Defendant Powur, PBC and its hired and controlled agents have robocalled Plaintiff dozens more times. Baker pays Powur a huge commission for each telemarketing call that "closes." Mr. Ewing brings this action under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), in hopes that an injunction and damages will encourage Powur, PBC, Budd, McKinney and NB Baker Electric, Inc. to change their ways.

## II. PARTIES

23.    Plaintiff Anton Ewing is a citizen of California who conducts business in California, in this District.

24.    Defendant Powur, PBC is a public benefit corporation organized under the laws of the State of Delaware with its principal place of business at 2683 Via De La Valle #G321, Del Mar, CA 92017 . Powur, PBC does business in this District and throughout the United States. Powur is not registered with the California Secretary of State and is thus doing business illegally in California.

25.    JONATHAN GREGORY BUDD is the president, CEO, manager, director,

18CV2843

officer, and alter ego of Powur, PBC.  Budd is the sole shareholder of Powur since his relative passed away this year (Andrea A Budd).  Budd does not respect the Powur, PBC formalities of entity operation and therefore he is not protected by its veil.  Budd uses Powur as his personal slush fund.

26.    Larry McKinney, is an individual, employee and agent of Powur, PBC. During 2018, McKinney performed telemarketing activities by, for and on behalf of Powur, PBC at the direction and control of Budd.  McKinney owns, controls and uses phone number 858-337-6493 to engage in his scam telemarketing on behalf of his employer, Powur, PBC.  McKinney is a citizen of California.  Upon information and belief, McKinney hired a David Brown (also at Powur), who calls himself a senior Manager at 509-528-3496 and using email address freesolarproposals.info@gmail.com.  David Brown and McKinney hired and paid "Raja" from Pakistan to run, operate and manage a telemarketing operation to auto-dial, with an ATDS, thousands of Americans each day, including Plaintiff on many occasions.  The scale of the operation is and was enormous.  Budd, McKinney and Brown have illegally profited over one million dollars from their telemarketing scam from NB Baker Electric.

27.    BUDD has knowingly and intentionally hired, directed and ordered NB Baker Electric, Inc, Powur, PBC and McKinney to obtain telemarketing leads and appointments through telemarketing activities in violation of the TCPA, CIPA and

extortion laws of California.  Budd is currently being sued by other American citizens for telemarketing violations and incessant telemarketing calls.  Budd runs Powur as multi-level marketing pyramid scam.

28.     NB Baker Electric, Inc., is a California corporation with offices Escondido, California.

29.     Larry McKinney is a senior employee of Powur, PBC and resides in Pacific Beach, California.  McKinney calls himself a Powur "National Executive Advisor" which is a very high level in the multi-level pyramid marketing scam (MLM) for Powur, PBC.  McKinney has be building his down-line in the MLM scam at Powur for 2 years and 8 months.  McKinney held a job for one year with Harley Davidson in 2014.  Prior to that, McKinney worked for Adroit Energy for five months and then Herca Solar for 1 year and 8 months as a solar panel telemarketer.  McKinney has a bachelor's degree in psychology from San Diego State University which he attended from 1987 to 1999.

### III. JURISDICTION AND VENUE

30.     <u>Jurisdiction</u>. This Court has federal-question subject matter jurisdiction over the Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). This Court has supplemental subject matter jurisdiction over the Plaintiff's claim arising under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§

17200 *et seq.*, Civil Code §1770(a)(22)(A), and California Invasion of Privacy Act, Penal Code §637.2, §632.7 because those claims:

   a. arises from the same nucleus of operative fact, i.e., Defendant's telemarketing robocalls to Plaintiff;

   b. adds little complexity to the case; and

   c. relies on the same nucleus of facts, so it's unlikely to predominate over the TCPA claims.

31.   <u>Personal Jurisdiction.</u> This Court has personal jurisdiction over Powur, PBC because a substantial part of the wrongful acts alleged in this Complaint were committed in California. For example, Powur, PBC made illegal telemarketing robocalls to Mr. Ewing, while he was in California.   Budd, who is the officer, director, and manager of Powur, PBC, has also subjected himself to personal jurisdiction in California because he is running said criminal operation.  Budd uses Powur, PBC to pay for his personal expenses that have nothing to do with the business or its required public purposes.  It is a crime to violate 47 USC §501 by violating 47 USC §227(b).  Powur, PBC is not registered to do business in California and Budd knowingly directed Powur, PBC to engage in illegal telemarketing in violation of the TCPA.  Raja, at the direction, order and command of Brown, McKinney and Budd, initiated the primary telemarketing calls to Plaintiff and then sold, transferred and provided the lead to the other defendants in

this matter in a knowingly illegal manner.  Powur controlled the telemarketing script that Raja had to record answer thereto from his telemarketing victims, including Plaintiff.

32.     "Where, as here, there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006); *Panavision Intern., L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). "Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdiction analyses under state law and federal due process are the same." *Yahoo!*, 433 F.3d at 1205 (citing Panavision, 141 F.3d at 1320). Due process requires that Defendants must have minimum contacts with the forum such that the assertion of jurisdiction in that forum "'does not offend traditional notions of fair play and substantial justice.'" *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2005) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 315, 66 S. Ct. 154, 90 L. Ed. 95 (1945)).

33.     There are two types of personal jurisdiction: general and specific. *Daimler AG v. Bauman*, 134 S. Ct. 746, 754-55, 187 L. Ed. 2d 624 (2014). "For general jurisdiction to exist over a nonresident defendant . . . , the defendant must engage in 'continuous and systematic general business contacts,' that 'approximate physical presence' in the forum state." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d

797, 801 (9th Cir. 2004) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984); *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000)) (internal citations omitted).  To establish specific jurisdiction, Plaintiff must show: "(1) [t]he non-resident defendant . . . purposefully direct[ed] [its] activities or consummate[d] some transaction with the forum or resident thereof; or perform some act by which [it] purposefully avail[ed] [itself] of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Id.* at 802.  At least two courts in the 9th have found specific jurisdiction in circumstances similar to this case. One court found personal jurisdiction where the out-of-state defendant sent numerous unsolicited fax advertisements to a California-based plaintiff. *Global Commc'ns, Inc. v. Blue Jay, Inc.*, No. C 08-4254 PJH, 2009 U.S. Dist. LEXIS 1616, 2009 WL 29905, at *2, 8-10 (N.D. Cal. Jan. 5, 2009). Another court found personal jurisdiction where the defendant operated a website that the California-plaintiff used, called and emailed the plaintiff numerous times, and the plaintiff's claims arose out of those contacts. *Heidorn v. BDD Mktg. & Mfg. Co., LLC*, No. C-13-00229 JCS, 2013 U.S. Dist. LEXIS 177166, 2013 WL 6571629, at *8 (N.D. Cal. Aug. 19, 2013). *Drew v.*

*Lexington Consumer Advocacy, LLC*, No. 16-cv-00200-LB, 2016 U.S. Dist. LEXIS 52385, at *4-7 (N.D. Cal. Apr. 18, 2016)

34.    <u>Venue</u>. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims occurred in this District and because Defendant McKinney resides in, i.e., is subject to personal jurisdiction in, this District.  Moreover, Powur, PBC is not registered with the California Secretary of State but does substantial business in this District.  NB Baker Electric, Inc. has purposefully directed its activities to California and advertises that it does business in California on its web page.

### IV. TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227

35.    In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding telemarketing.

36.    The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice… to any telephone number assigned to a … cellular telephone service." 47 U.S.C. §227(b)(1)(A)(iii).

37.    The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is

18CV2843

initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

38.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

39.     The TCPA makes it unlawful to make telemarketing solicitations to telephone numbers on the National Do Not Call Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

40.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c). 47 U.S.C. § 227(c)(5).

41.     According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

42.     The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

43.     The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In

particular:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted).

44.     FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

45.     The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

46.     The 9th Circuit has defined an ATDS as follows: "we conclude that the statutory definition of ATDS is not limited to devices with the capacity to call numbers produced by a "random or sequential number generator," but also

PLAINTIFF'S FIRST AMENDED COMPLAINT FOR VIOLATIONS UNDER TCPA - 14

includes devices with the capacity to dial stored numbers automatically.

Accordingly, we read § 227(a)(1) to provide that the term automatic telephone

dialing system means equipment which has the capacity—(1) to store numbers to

be called or (2) to produce numbers to be called, using a random or sequential

number generator—and to dial such numbers."

47.     Senator Fritz Hollings complained, "[c]omputerized calls are the scourge of

modern civilization.  They wake us up in the morning; they interrupt our dinner at

night; they force the sick and elderly out of bed; they hound us until we want to rip

the telephone right out of the wall." 137 Cong. Rec. S16, 205 (daily ed. Nov. 7,

1991) (statement of Sen. Hollings).  Recipients deemed that "automated telephone

calls that deliver an artificial or prerecorded voice message are more of a nuisance

and a greater invasion of privacy than calls placed by 'live' persons." S. Rep. No.

102-178, at 4.

48.     The plausibility standard 'calls for enough fact to raise a reasonable

expectation that discovery will reveal evidence' of the defendant's liability."

*Miyahira v. Vitacost.com, Inc.*, 715 F.3d 1257, 1265 (11th Cir. 2013) (quoting

*Twombly*, 550 U.S. at 556).  The Federal Communications Commission ("FCC")—

which has authority to implement the TCPA's provisions, *see* 47 U.S.C. §

227(b)(2)— has stated that a plaintiff, to establish a TCPA violation, "need only

show that [the Defendant] called a number assigned to a cellular telephone service

using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012). Because the Defendants have violated multiple subsections of 47 U.S.C. §227, including but not limited to 47 U.S.C. §227(b)(1)(A) and §227(c), then Defendants, and each of them, have committed the criminal violation of 47 U.S.C. §501.

49.    "[P]rior express consent is an affirmative defense, not an element of the claim," meaning a plaintiff "need not plead that he did not give his prior express consent." *Manfred v. Bennett Law, PLLC*, No. 12–CV–61548, 2012 WL 6102071, at *2 (S.D. Fla. Dec. 7, 2012). Rather, "[t]he only thing [a] [p]laintiff must plead to establish a violation of the TCPA is that the [d]efendants left voicemail messages at a number assigned to a cellular telephone service using an automatic dialing system or an artificial or pre-recorded voice." *Id.* (denying motion to dismiss for failure to state a claim where the plaintiff alleged "that [the] [d]efendants used an Automatic Telephone Dialing System or an artificial or pre-recorded voice to place the telephone calls to [the] [p]laintiff's cellular phone.").

50.    Plaintiff Ewing alleges that Defendants placed repeated automated telephone (ATDS) calls to Plaintiff Ewing's cell phone (619-719-9640) from Defendant's phones and that the calls exhibited signs of being made with an Automatic Telephone Dialing System, including repeated telemarketing calls to Plaintiff Ewing within a period of time (over the last five months) and the presence of a

18CV2843

pause or click (which is proven by the recording), which is commonly associated with an Automated Telephone Dialing System (ATDS). Those allegations are true and are sufficient to establish the elements of a TCPA claim. Defendant Powur, PBC's telemarketing agent also admitted on the call that they used an ATDS to initiate the dialing of the call to Plaintiff Ewing.

51.    ABC, Inc (a Doe Defendant to be named after discovery reveals the same) that was hired by Powur, PBC and BUDD to knowingly and intentionally make robo-dialed calls to Plaintiff Ewing with a pre-recorded voice message that was used for telemarketing purposes between February 10, 2017 and December 13, 2018. ABC, Inc has subsequently made illegal telemarketing calls to Ewing and discovery may very well lead to adding ABC, Inc as a defendant herein.

52.    California Civil Code section 1770(a)(22)(A) prohibits prerecorded telemarketing messages.

53.    As Judge Easterbrook of the Seventh Circuit recently explained in a TCPA case regarding calls to a non-debtor similar to this one:

> The Telephone Consumer Protection Act...is well known for its provisions limiting junk-fax transmissions. A less-litigated part of the Act curtails the use of automated dialers and prerecorded messages to cell phones, whose subscribers often are billed by the minute as soon as the call is answered--and routing a call to voicemail counts as answering the call. An automated call to a landline phone can be an annoyance; an automated call to a cell phone adds expense to annoyance.
> *Soppet v. Enhanced Recovery Co., LLC, 679 F.3d 637, 638 (7th Cir. 2012)*

18CV2843

54.    As the Court unanimously held in *Haines v. Kerner*, 404 U.S. 519 (1972), a pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Id., at 520-521, quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)." *Estelle v. Gamble* (1976) 429 U.S. 97, 106 [97 S.Ct. 285, 292, 50 L.Ed.2d 251, 261].

## V. STANDING

55.    The court must evaluate lack of statutory standing under the Rule 12(b)(6) standard. *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).  However, because Plaintiff is proceeding pro se, his complaint "must be held to less stringent standards than formal pleadings drafted by lawyers" and must be "liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (reaffirming standard reviewing pro se complaints post-*Twombly*). The Ninth Circuit has concluded that the court's treatment of pro se filings after *Twombly* and *Iqbal* remain the same and pro se pleadings must continue to be liberally construed. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010); see also *McGowan v. Hulick*, 612 F.3d 636, 640-42 (7th Cir. 2010); *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461-62 (5th Cir. 2010); *Harris v. Mills*, 572 F.3d 66, 71-72 (2d Cir. 2009) (noting

that even following *Twombly* and *Iqbal*, "we remain obligated to construe a pro se complaint liberally").

56.     Standing is proper under Article III of the Constitution of the United States of America because Plaintiff's claims state:

    A. A valid injury in fact;

    B. which is traceable to the conduct of Defendants;

    C. and is likely to be redressed by a favorable judicial decision.  See, *Spokeo, Inc. v. Robins*, 578 U.S.____(2016) at 6, and *Lujan v. Defenders of Wildlife*, 504 U.S. 555 at 560.  In order to meet the standard laid out in *Spokeo* and *Lujan*, Plaintiff must clearly allege facts demonstrating all three prongs above.

**The "Injury in Fact" Prong.**

57.     Plaintiff's injury in fact, must be both "concrete" and "particularized" in order to satisfy the requirements of Article III of the Constitution, as laid out in *Spokeo* (Id.). For an injury to be "concrete," it must be a de facto injury, meaning that it actually exists.  In the present case, Plaintiff was called on his cellular phone at least fifteen (15) times by Defendants, most from Raja as directed by Brown, who was told to make the calls by McKinney.  McKinney was ordered by Budd to call the database of phone numbers.  Budd was paid by Baker to make the calls.  In fact, Plaintiff expressly informed Defendants and their agents to cease and desist

18CV2843

from all future telemarketing on the very first call.  Such calls are a nuisance, an invasion of privacy, and an expense to Plaintiff in multiple ways. *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012).  Defendant's invasion of Plaintiff's right to privacy is further exacerbated by the fact that Plaintiff's phone number, at all times relevant to this litigation, was on the National Do-Not-Call Registry ( hereinafter, "DNC Registry"). As well, Plaintiff had no prior business relationship with Defendants Baker, Budd, McKinney and Powur prior to receiving the seriously harassing and annoying calls as well as the extortionate threats by Budd.   All of Plaintiff's injuries are concrete and de facto. For an injury to be "particularized" means that the injury must "affect the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins,* 135 S.Ct. 1540, *578 U.S. ___ (2016)* at 14.   In the instant case, it was Plaintiff's phone that was called and it was Plaintiff who answered the calls. It was Plaintiff's personal privacy and peace that was invaded by Defendant's persistent phone calls using an ATDS and a pre-recoded message, despite Plaintiff having no prior business relationship with Defendants and Plaintiff's attempt to avoid the damage by registering his number on the DNC Registry.  Additionally, Plaintiff Ewing has a clear warning on each and every page of his web domain that warns offenders that if you call, you will be sued.  In fact, Ewing had to remove his own phone number from his web page several years ago (please go ahead and verify this on the waybackmachine[1]) due

---

[1] Exact copy of web page in 2015:

18CV2843

the incessant, annoying and harassing calls by scam telemarketers like these defendants. Moreover, a simple Google search of Ewing's phone number will yield page after page of warnings that threaten a civil suit if you call. Ewing's number is in the dnc.com known litigator software that could have been used for $230 per month (must less than the $16,000 per year charged by the FTC). And, Ewing has sent out hundreds of emails to TCPA defense attorneys nationwide warning them that if their clients call Ewing's phone, they will be sued. Finally, Plaintiff is responsible to pay the bill on his cellular phone, and to pay the bill for the electric utility company kilowatt-hour power usage to recharge it. All of these injuries are particularized and specific to Plaintiff and will be the same injuries suffered by Plaintiff.

**The "Traceable to the Conduct of Defendants" Prong**

58.     The second prong required to establish standing at the pleadings phase is that Plaintiff must allege facts to show that their injury is traceable to the conduct of Defendants. In the instant case, this prong is met by the fact that the calls to Plaintiff's cellular phone and home phone (land line) were placed either by Defendants directly, or by Defendants' agent at the express direction and control of

---

https://web.archive.org/web/20151109045712/http://www.antonewing.com:80/contact

PLAINTIFF'S FIRST AMENDED COMPLAINT FOR VIOLATIONS UNDER TCPA - 21

18CV2843

Defendants.   See *Jones v. Royal Admin. Servs., 866 F.3d 1100 (9th Cir. 2017)* ten

factor test[2] from the 9th Circuit and Civil code §2307.

**The "Injury is Likely to be Redressed by a Favorable Judicial Opinion"**

**Prong**

59.    The third prong to establish standing at the pleadings phase requires Plaintiff

to allege facts to show that the injury is likely to be redressed by a favorable

judicial opinion. In the present case, Plaintiff's Prayers for Relief includes a

request for damages for each call made by Defendants, as authorized by statute in

47 U.S.C. § 227. The statutory damages were set by Congress and specifically

redress the financial damages suffered by Plaintiff.  Furthermore, Plaintiff's

Prayers for Relief request injunctive relief to restrain Defendants from the alleged

abusive practices in the future. The award of monetary damages and the order for

injunctive relief redress the injuries of the past and prevent further injury in the

future. Because all standing requirements of Article III of the U.S. Constitution

have been met, as laid out in *Spokeo, Inc. v. Robins*, 578 U.S. ___ (2016), Plaintiff

has standing to sue Defendants on the stated claims.

---

[2] 1) the control exerted by the employer, 2) whether the one employed is engaged in a distinct occupation, 3) whether the work is normally done under the supervision of an employer, 4) the skill required, 5) whether the employer supplies tools and instrumentalities [and the place of work], 6) the length of time employed, 7) whether payment is by time or by the job, 8) whether the work is in the regular business of the employer, 9) the subjective intent of the parties, and 10) whether the employer is or is not in business.

18CV2843

60.    "…[C]ourts in the Ninth Circuit have held that "allegations of nuisance and invasions of privacy in TCPA actions are concrete" injuries that establish standing. See *Mbazomo v. ETourandtravel, Inc.*, 16-CV-2229-SB, 2016 U.S. Dist. LEXIS 170186, 2016 WL 7165693, at *2 (E.D. Cal. Dec. 8, 2016).  In *Mbazamo*, the court held that a violation of the TCPA represents a concrete injury because "[t]he history of sustaining claims against both unwelcome intrusion into a plaintiff's seclusion and unceasing debt-collector harassment are squarely 'harm[s] that [have] traditionally been regarded as providing a basis for a lawsuit.'" Mbazomo, 2016 U.S. Dist. LEXIS 170186, 2016 WL 7165693, at *2 (quoting *Spokeo*, 136 S.Ct. at 1549-50). The court declined to follow Romero, explaining that Romero "improperly erodes the pleading standard set under Fed. R. Civ. P. 8(a) . . . . A plaintiff [need only] plausibly tie the alleged acts of the defendant to the alleged harms suffered." Id.  *Messerlian v. Rentokil N. Am., Inc.* (C.D.Cal. Dec. 15, 2016, No. CV 16-6941-GW (GJSx)) 2016 U.S.Dist.LEXIS 175224, at *7-8.

61.    "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*. at 1548 (quoting *Lujan*, 504 U.S. at 560). The Supreme Court noted that concreteness is quite distinct from particularization. *Id*. An injury is "particularized" if it affects "the plaintiff in a personal and individual way." *Id*. In addition, for an injury to be

"concrete", it must be "de facto," meaning that it is "real" and not "abstract." *Id.* However, an injury need not be "tangible" in order to be "concrete," and intangible injuries may constitute injury in fact. *Id.* at 1549. In order to determine whether an intangible harm constitutes injury in fact, *Spokeo* provided two factors to be considered: "history and the judgment of Congress." *Id.* at 1549. Specifically, "(1) whether the statutory violation bears a 'close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts,' and (2) congressional judgment in establishing the statutory right, including whether the statutory right is substantive or procedural." *Matera v. Google*, No. 15cv 4062-LHK, 2016 WL 5339806, at *9 (N.D. Cal. Sept. 23, 2016). *Spokeo* also held that "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact." *Spokeo*, 136 S. Ct. at 1549.  In such a case, a plaintiff "need not allege any additional harm beyond the one [the legislature] has identified." *Id.*

62.     The TCPA provides a private right of action for violations of § 227(b) and the associated regulations. 47 U.S.C. § 227(b)(3).  Subsection (b) prohibits calls (other than for an emergency) to a telephone number assigned to a cellphone by way of an automatic telephone dialing system ("ATDS") without the prior express consent of the called party. 47 U.S.C. § 227(b)(1)(A)(iii).  In the Ninth Circuit, a plaintiff must show: (1) "the defendant called a cellular telephone number; (2)

"using an automatic telephone dialing system; (3) without the recipient's prior express consent." *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012). A plaintiff must also be a "called party" within the definition of the TCPA. *Charkchyan v. EZ Capital*, No. 2:14-cv-03564-ODW (ASx), 2015 U.S. Dist. LEXIS 76560, 2015 WL 3660315, at *3 (C.D. Cal. June 11, 2015)

63.     First, a text message and a prerecorded robotic voice message call are both a "call" for purposes of the TCPA. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952-54 (9th Cir. 2009). Plaintiff will propound discovery, including requests for production of documents that will support these allegations with activity logs in 2018 documenting the calls. This element is satisfied.

64.     Second, Plaintiff adequately pleads use of an automatic telephone dialing system ("ATDS"). The TCPA defines ATDS to mean "equipment which has the capacity — (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). The focus of the inquiry is on the equipment's *capacity* to perform this function. *See Satterfield*, 569 F.3d at 951. "Accordingly, a system need not actually store, produce, or call randomly or sequentially generated telephone numbers, it need only have the capacity to do it." *Id.* Defendants called with a prerecorded message from Pakistan, which, by definition requires an auto-dialer that operates without human intervention.

18CV2843

65.   "In proving a defendant's use of [an] ATDS under the TCPA, courts have recognized the difficulty a plaintiff faces in knowing the type of calling system the defendant used without the benefit of discovery." *Charkchyan,* 2015 U.S. Dist. LEXIS 76560, 2015 WL 3660315 at *3.  For example, in *Charkchyan,* the plaintiff's allegations supported the use of an ATDS.  *Id.*  In that case, the plaintiff described the messages received "as being formatted in SMS short code, '670-76,'" and as being impersonally scripted. *Id.*  This was enough to establish the defendant used an ATDS. *Id.*   Similarly, in *Kramer v. Autobytel,* the plaintiff alleged sufficient facts to support a reasonable inference that the defendants used an ATDS: "[The plaintiff] described the messages from SMS short code 77893, a code registered to [a defendant]. The messages were advertisements written in an impersonal manner. [And,] [the plaintiff] had no other reason to be in contact with the Defendants." 759 F. Supp. 2d 1165, 1171 (N.D. Cal. 2010). In contrast, the plaintiff in *Williams v. T-Mobile USA, Inc.* failed to plead more than "legal conclusions couched in fact" when asserting the "barrage of calls and . . . frequency and pattern of the calls provide[d] the necessary factual support." No. 15-cv-3384-JSW, 2015 U.S. Dist. LEXIS 140077, 2015 WL 5962270, at *2-3 (N.D. Cal. Oct. 14, 2015). *See also Daniels v. ComUnity Lending, Inc.,* No. 13cv488-WQH-JMA, 2014 U.S. Dist. LEXIS 1606, 2014 WL 51275, at *5 (S.D.

Cal. Jan. 6, 2014) (ATDS use not plausible because the allegations indicated the defendants directed calls specifically towards the plaintiff).

66.     Here, Plaintiff alleges that Defendants (Budd, Baker, McKinney, Powur) contacted him using a "telephone dialing system."  This is insufficient standing alone, but as in *Charkchyan* and *Kramer*, Plaintiff alleges sufficient additional facts. First, each of the calls are available to the Court as audio recordings of the robotic voice message that initiated the calls. Second, the calls are impersonal advertisements: they do not address Plaintiff personally and they advertise Defendant's product. Third, Plaintiff declares that he has never heard of Defendants, visited any location operated by Defendants prior to the harassing and annoying calls, nor provided his cellular telephone numbers to Defendants or consented to receive calls from Defendants.  Plaintiff also has had no prior business relationship with Defendants.  Plaintiff had no reason to be in contact with Defendants nor have they ever purchased any kind of product or service. Plaintiff's allegations are sufficient to establish that Defendants used ATDS in sending their prerecorded solicitation messages.

67.     Third, Plaintiff adequately pleads that the conduct was without his prior express consent. "Prior express consent" under the TCPA is "consent that is clearly and unmistakably stated." *Satterfield*, 569 F.3d at 955; *Charkchyan*, 2015 U.S. Dist. LEXIS 76560, 2015 WL 3660315 at *3.  Moreover, "[t]he Federal

18CV2843

Communications Commission ('FCC'), tasked with instituting implementing

regulations for the TCPA, added an express *written* consent requirement in the case

of messages that 'include[] or introduce[] an advertisement or constitute[]

telemarketing.'" *Meyer v. Bebe Stores, Inc.*, No. 14-cv-00267-YGR, 2015 U.S.

Dist. LEXIS 12060, 2015 WL 431148, at *3 (N.D. Cal. Feb. 2, 2015) (citing 47

C.F.R. § 64.1200(a)(2)). An "advertisement" includes "any material advertising

the commercial availability or quality of any property, goods, or services." 47

C.F.R. § 64.1200(f)(1). "Telemarketing" means the initiation of a telephone call or

message for the purpose of encouraging the purchase or rental of, or investment in,

property, goods, or services, which is transmitted to any person." *Id.* §

64.1200(f)(12). Establishing prior express consent of the called party "is an

affirmative defense for which the defendant bears the burden of proof."

*Charkchyan*, 2015 U.S. Dist. LEXIS 76560, 2015 WL 3660315 at *3.

68.    In *Charkchyan*, the plaintiff did not give prior express consent. *Id.* There, the

plaintiff claimed: "(1) he [was] the current subscriber to the cellular telephone at

issue; (2) he [had] never heard of [the defendant]; (3) he [had] never visited any

location operated by [the defendant]; and (4) he [had] never provided his cellular

number to [the defendant], nor consented to receiving calls from [the

defendant]." *Id.* Where the defendant failed to provide any conflicting evidence,

this was sufficient. *Id.*

18CV2843

69.     Similarly, in Plaintiff's case, the allegations establish that he did not give prior express consent.  He declared that he was "the regular user and subscriber to the cellular telephone number at issue."  He also declared that he has "never heard of [Defendants], visited any location operated by [Defendants], provided [his] cellular telephone number to [Defendants,] or consented to receive text messages from [Defendants]."  As in *Charkchyan*, these allegations are sufficient to support Plaintiff's claims that he did not give prior express consent authorizing Defendants to send the prerecorded messages. Furthermore, the calls promote the sender's illegal solar panel business and fall within the FCC's definition of an advertisement and/or telemarketing. Thus, express written consent was required, and there is no evidence of such. This element is consequently satisfied.

70.     Fourth, Plaintiff sufficiently pleads that he was the "called party." To have standing under the TCPA, a plaintiff must be the "called party." *See Charkchyan*, 2015 U.S. Dist. LEXIS 76560, 2015 WL 3660315 at *3, *4; 47 U.S.C. § 227(b)(1)(A). A telephone service subscriber is the "called party" within the meaning of the TCPA. *Charkchyan*, 2015 U.S. Dist. LEXIS 76560, 2015 WL 3660315 at *3; *Gutierrez v. Barclays Group*, No. 10cv1012 DMS (BGS), 2011 U.S. Dist. LEXIS 12546, 2011 WL 579238, at *4 (S.D. Cal. Feb. 9, 2011). Here, Plaintiff declares that he was "the regular user and subscriber to the cellular phone number" that received the calls and messages.  Plaintiff is therefore the "called

party." *See Charkchyan*, 2015 U.S. Dist. LEXIS 76560, 2015 WL 3660315 at *3.

*Drew v. Defendants Consumer Advocacy, LLC*, No. 16-cv-00200-LB, 2016 U.S.

Dist. LEXIS 52385, at *11-16 (N.D. Cal. Apr. 18, 2016)

## VI. FACTUAL ALLEGATIONS

**A. Powur, PBC**

71.     One of Powur, PBC's strategies for marketing its services is placing

telemarketing robocalls to those who have not consented to receive such

solicitations, including Plaintiff.

72.     Plaintiff's investigation has discovered that Powur, PBC and its Pakistan

agent uses equipment that has the capacity to store or produce random or

sequential telephone numbers to be called and that includes autodialers and

predictive dialers (each an "automatic telephone dialing system" or "ATDS").

73.     NB Baker Electric, Inc. pays commissions to Powur, PBC, Budd and

McKinney.  Brown is the marketing agent for BUDD and Powur.  Powur

knowingly advertises for BUDD.  Each Defendant knows of and is aware of each

of the other Defendant's duties, responsibilities and function within the

telemarketing operation.  Each Defendant is a co-conspirator with each other

Defendant in this matter.  They all know each other, they all talk to eachother.

They have all designed, planned and orchestrated the telemarketing scheme and

scam together.

18CV2843

**B. Plaintiff**

74.    Plaintiff Anton Ewing is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

**C. Telephone number 619-719-9640**

75.    A phone number beginning 619-719-9640 is registered to Mr. Ewing.

76.    619-719-9640 is on the National Do Not Call Registry.

77.    619-987-2016 is registered to a residential telephone service.

78.    Mr. Ewing answers calls made to 619-719-9640 and 619-987-2016.

79.    Mr. Ewing pays the phone bills for 619-719-9640 and 619-987-2016.

**F. Powur, PBC's Illegal Telemarketing Robocalls to Plaintiff**

80.    On December 12, 2018, a call to 619-719-9640, which is Mr. Ewing's cellular telephone, caused his cell phone to ring. Mr. Ewing picked up. The person on the other end wasn't anyone Mr. Ewing knew.  In fact, it wasn't a person at all; it was a prerecorded voice and then Raja can on the line.

81.    Plaintiff has never heard of NB Baker Electric, Inc., Brown, McKinney, Budd or Powur, PBC and had not given them permission to call him, let alone with a telemarketing robocall. Mr. Ewing was surprised and frustrated to be interrupted by a prerecorded solicitation to a phone number that had long been on the National Do No Call Registry.

18CV2843

82.     It didn't stop there. *Powur, PBC placed at least 10 more telemarketing robocalls to Mr. Ewing after Raja.* The call on December 12, 2018 came from 509-528-3496 which turns out to be Brown's phone number. The agent on the phone said he was with "Powur." The agent said his name was Dave Brown on the second call and he said that Raja from Pakistan was the source of the lead. Plaintiff recorded this annoying, harassing and PC §653m-violating call and will play it for the Court.

83.     Most of these robocalls used a prerecorded or artificial voice, while the rest were marked by an unnatural click or pause at the beginning—signaling to Mr. Ewing that the call was placed by an ATDS rather than manually dialed by a person.

84.     More than a dozen of Powur, PBC's telemarketing robocalls were made to Mr. Ewing while he was in California, in this District.

85.     More than a dozen of Powur, PBC's telemarketing robocalls were made to Mr. Ewing after Powur, PBC knew of his desire to never been solicited via telemarketing calls, which is publicly known in this District.

86.     Mr. Ewing repeatedly asked Powur, PBC to stop calling.

87.     Due to the massive volume of robocalls made by Defendant Powur, PBC to Ewing, Plaintiff's investigation into the calls and their illegal features (e.g.,

18CV2843

prerecorded voices and placement by an ATDS, as manifested by beginning with an unnatural click or pause) is ongoing.

## VII. FIRST CLAIM FOR RELIEF

### (Non-Emergency Robocalls to Cellular Telephones, 47 U.S.C. § 227(b)(1)(A))

88.     Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

89.     The foregoing acts and omissions of Powur, PBC and its affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making non-emergency telemarketing robocalls to the cellular telephone numbers of Plaintiff without prior express written consent.

90.     McKinney, Budd, and NB Baker Electric, Inc. are affiliates and agents of Powur, PBC.  Budd uses Powur as his alter ego and  does not conduct annual meetings, does not have a separate bank account from that of his personal account and he is the sole shareholder, sole director and sole officer as of the date of filing this lawsuit.

91.     Each named defendant in this matter is vicariously liable for the acts and actions of each of the other named defendants under the *Gomez* case from the US Supreme Court handed down on January 20, 2016.  NB Baker Electric, Inc controls, regulates and governs every detail and every aspect of Powur's business and marketing.

92.     Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(b)(3)(B).

93.     Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(b)(3).

94.     Plaintiff also seek a permanent injunction prohibiting Powur, PBC and NB Baker Electric and its affiliates and agents from making non-emergency telemarketing robocalls to cellular telephone numbers without prior express written consent of the called party.

## VIII. SECOND CLAIM FOR RELIEF

**(Non-Emergency Robocalls to Residential Telephones, 47 U.S.C. § 227(b)(1)(B))**

95.     Mr. Ewing realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

96.     The foregoing acts and omissions of Powur, PBC and/or its affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(B), by making non-emergency prerecorded telemarketing calls to the residential telephone 619-987-2016 number of Mr. Ewing without prior express written consent.

97.     McKinney, Budd, and NB Baker Electric, Inc. are affiliates and agents of Powur, PBC.

98.     Mr. Ewing is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(b)(3)(B).

18CV2843

99.   Mr. Ewing is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(b)(3).

100.   Mr. Ewing also seeks a permanent injunction prohibiting Powur, PBC and NB Baker Electric and its affiliates and agents from making non-emergency prerecorded telemarketing calls to residential telephone numbers without prior express written consent of the called party.

## IX. THIRD CLAIM FOR RELIEF

**(Telemarketing Solicitations to National Do Not Call Registrants, 47 U.S.C. § 227(c))**

101.   Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

102.   The foregoing acts and omissions of Powur, PBC and/or its affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(c), by making telemarketing solicitations to residential and wireless telephone numbers listed on the Federal Government's National Do Not Call Registry. 47 C.F.R. §64.1200(c)(2).

103.   McKinney, Budd, and NB Baker Electric, Inc. are affiliates and agents of Powur, PBC.

104.   Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

18CV2843

105.   Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

106.   Plaintiff also seeks a permanent injunction prohibiting Powur, PBC and its affiliates and agents from making telemarketing solicitations to residential and wireless telephone numbers listed on the Federal Government's National Do Not Call Registry.

## XI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against all Defendants, jointly and severally, as follows:

A. Leave to amend this Complaint to conform to the evidence presented at trial;

B. A declaration that actions complained of herein by Powur, PBC, Budd, McKinney and NB Baker Electric, Inc violate the TCPA, CIPA and the UCL;

C. An order enjoining Powur, PBC, Budd, McKinney and NB Baker Electric, Inc and its affiliates and agents from engaging in the unlawful conduct set forth herein, including violation of 47 USC §501;

D. An award to Plaintiff of damages, as allowed by law under the TCPA, and not limited to the calls listed above;

18CV2843

E. For statutory damages in the amount of $5,000 per violation pursuant to California Penal Code §637.2(a)(1) or, if greater, three times actual damages as provided in California Penal Code §637.2(a)(2);

F. $500 plus threefold damages for intentional, knowing or willful violation of the Do-Not-Call Registry for each and every call;

G. For punitive damages in an amount to be determined with exactness at trial herein;

H. For a preliminary and permanent injunction to restrain further violations of the CIPA, pursuant to California Penal Code §637.2(b);

I. For the payment of reasonable attorneys' fees and costs of suit incurred herein under all applicable statutes and rules including under Cal. Civ. Proc. Code §1021.5 for attorneys that have been or will be hired;

J. For an injunction prohibiting all Defendants from ever contacting Plaintiff ever again in any manner whatsoever, including spam texting, robodialing, and spam emailing;

K. $1,500 for each violation of 16 CFR §610.4(b)(iii)(B) initiating a call to a DNC registered number;

L. $1,500 for each violation of 47 CFR §64.1601(3) caller ID spoofing;

M. $1,500 for each violation of 47 CFR §64.1200(d)(1) failure to provide copy of written do not call policy;

N. $1,500 for each violation of 47 CFR §64.1200(b)(1) failure to state name of

business at beginning of call;

O. $1,500 for each violation of 47 USC §227(b)(1)(A)(iii) willful or knowing

call to cellular phone;

P. $1,500 for each violation of 47 USC §227(b)(1) for using an ATDS;

Q. $1,500 for each violation of 47 USC §227(c) and (d) for calling a phone

number on the DNC registry; and

R. For any other relief that the Court deems just and proper.

### XI. DEMAND FOR JURY

Plaintiff demands a trial by jury for all issues so triable.

Dated: January 17, 2019

/S/ Anton Ewing
Anton Ewing, Plaintiff

PLAINTIFF'S FIRST AMENDED COMPLAINT FOR VIOLATIONS UNDER TCPA - 38

18CV2843

# EXHIBITS IN 18-CV-2843

# EXHIBIT A



Issue Date:        Jan 09, 2019

**Payment information below, bill details begin on the next page**



Managing your AT&T bill **is easy**

## On-the-go account management

Never forget when your payment is due ever again. From setting up Auto Bill Pay to tracking your data, the myAT&T app lets you manage everything on your AT&T account.

Download the app at **att.com/youraccount**.





## On time, every time

Pay your bill securely and on time with AT&T AutoPay. Set up and approve a date using the myAT&T app and you'll never miss a payment.

**att.com/ontimepay**

0618FTH1



ANTON EWING
3077 CLAIREMONT DR # 372
SAN DIEGO, CA 92117-6800

**Credit balance: -$299.57**
**No payment is required**
Account number: 337032098931

Make check payable to:
AT&T MOBILITY
PO Box 537104
Atlanta, GA 30353-7104

☐ CHECK FOR AUTOPAY
(SEE REVERSE)

910003370320989310000000001944400000029957016

**AT&T**

| | |
|---|---|
| Page: | 4 of 23 |
| Issue Date: | Jan 09, 2019 |
| Account Number: | 337032098931 |

*...619.888.1296 continued*

| | | |
|---|---|---|
| 11. | Teleconnect Fund | $0.12 |
| 12. | Universal Lifeline | $0.72 |

**Total for 619.888.1296**     **$26.23**

## Phone, 858.333.1962
ANTON EWING

### Monthly charges     *Jan 10 - Feb 09*

| | | |
|---|---|---|
| 1. | Access for Smartphone 4G LTE w/ VVM | $20.00 |

### Surcharges & fees

| | | |
|---|---|---|
| 2. | Administrative Fee | $1.99 |
| 3. | Federal Universal Service Charge | $1.61 |
| 4. | Regulatory Cost Recovery Charge | $1.25 |
| 5. | State Public Utility Surcharge | $0.04 |

### Government taxes & fees

| | | |
|---|---|---|
| 6. | CA Advanced Services Fund (CASF) | $0.08 |
| 7. | CHCF A | $0.05 |
| 8. | Relay Service Device Fund | $0.08 |
| 9. | State 911 Tax | $0.29 |
| 10. | Teleconnect Fund | $0.12 |
| 11. | Universal Lifeline | $0.72 |

**Total for 858.333.1962**     **$26.23**

**Total for Wireless**     **$194.44**

## Detailed usage

### Wireless, 619.719.9640
ANTON EWING

#### Call Detail

| Time | Place Called | Number Called | Rate Code | Feature Code | Min | Airtime Charges | LD/Addl Charges |
|---|---|---|---|---|---|---|---|
| *Monday, Dec 10* | | | | | | | |
| 06:30am | AUSTIN TX | 512.813.2371 | SDDV | | 1 | $0.00 | $0.00 |
| 08:08am | INCOMI CL | 202.996.7062 | SDDV | | 1 | $0.00 | $0.00 |
| 08:09am | WASHIN DC | 202.996.7062 | SDDV | | 1 | $0.00 | $0.00 |
| 08:10am | INCOMI CL | 202.996.7062 | SDDV | | 5 | $0.00 | $0.00 |
| 08:30am | INCOMI CL | 202.996.7062 | SDDV | | 4 | $0.00 | $0.00 |
| 09:07am | EL CAJ CA | 619.244.1807 | SDDV | | 2 | $0.00 | $0.00 |

| Time | Place Called | Number Called | Rate Code | Feature Code | Min | Airtime Charges | LD/Addl Charges |
|---|---|---|---|---|---|---|---|
| 09:09am | INCOMI CL | 661.666.0118 | SDDV | | 11 | $0.00 | $0.00 |
| 09:20am | CALL WAIT | 718.303.2072 | SDDV | CW | 18 | $0.00 | $0.00 |
| 09:41am | WASHIN DC | 202.996.7062 | SDDV | | 2 | $0.00 | $0.00 |
| 09:43am | INCOMI CL | 202.996.7062 | SDDV | | 4 | $0.00 | $0.00 |
| 09:52am | INCOMI CL | 760.644.3Z59 | SDDV | | 2 | $0.00 | $0.00 |
| 09:56am | STN IS NY | 718.303.2072 | SDDV | | 1 | $0.00 | $0.00 |
| 10:02am | LEMONT IL | 630.343.6858 | SDDV | | 4 | $0.00 | $0.00 |
| 11:24am | Toll F CL | 888.635.0494 | SDDV | | 1 | $0.00 | $0.00 |
| 11:24am | SCRM M CA | 916.845.7033 | SDDV | | 1 | $0.00 | $0.00 |
| 02:06pm | INCOMI CL | 619.852.8827 | SDDV | | 3 | $0.00 | $0.00 |
| 02:09pm | CALL WAIT | 619.719.9640 | SDDV | CW | 1 | $0.00 | $0.00 |
| 02:11pm | CHULAV CA | 619.852.8827 | SDDV | | 1 | $0.00 | $0.00 |
| 02:25pm | SAUSAL CA | 415.275.6144 | SDDV | | 1 | $0.00 | $0.00 |
| 02:25pm | CALL WAIT | 619.347.0726 | SDDV | CW | 8 | $0.00 | $0.00 |
| 02:33pm | CALL WAIT | 619.208.9380 | SDDV | CW | 5 | $0.00 | $0.00 |
| 02:38pm | INCOMI CL | 619.719.9640 | SDDV | | 1 | $0.00 | $0.00 |
| 02:51pm | SAUSAL CA | 415.275.6144 | SDDV | | 1 | $0.00 | $0.00 |
| 02:52pm | SAUSAL CA | 415.275.6144 | SDDV | | 1 | $0.00 | $0.00 |

*619.719.9640 continues...*



Page: 5 of 23
Issue Date: Jan 09, 2019
Account Number: 337032098931

*...619.719.9640 continued*

| Time | Place Called | Number Called | Rate Code | Feature Code | Min | Airtime Charges | LD/Addl Charges |
|---|---|---|---|---|---|---|---|
| 02:52pm | SAUSAL CA | 415.275.6144 | SDDV | | 1 | $0.00 | $0.00 |
| 02:53pm | SAUSAL CA | 415.275.6144 | SDDV | | 1 | $0.00 | $0.00 |
| 02:54pm | SAUSAL CA | 415.275.6144 | SDDV | | 1 | $0.00 | $0.00 |
| 02:55pm | SAUSAL CA | 415.275.6144 | SDDV | | 1 | $0.00 | $0.00 |
| 02:55pm | SAUSAL CA | 415.275.6144 | SDDV | | 1 | $0.00 | $0.00 |
| 03:49pm | INCOMI CL | 760.532.3651 | SDDV | | 1 | $0.00 | $0.00 |
| 04:28pm | EL CAJ CA | 619.443.3843 | SDDV | | 2 | $0.00 | $0.00 |
| 05:17pm | INCOMI CL | 619.347.0726 | SDDV | | 5 | $0.00 | $0.00 |
| 07:06pm | INCOMI CL | 347.293.0862 | SDDV | | 9 | $0.00 | $0.00 |
| 07:37pm | INCOMI CL | 347.662.2126 | SDDV | | 6 | $0.00 | $0.00 |

*Tuesday, Dec 11*

| Time | Place Called | Number Called | Rate Code | Feature Code | Min | Airtime Charges | LD/Addl Charges |
|---|---|---|---|---|---|---|---|
| 08:24am | INCOMI CL | 619.852.8827 | SDDV | | 4 | $0.00 | $0.00 |
| 08:31am | INCOMI CL | 619.719.2516 | SDDV | | 5 | $0.00 | $0.00 |
| 08:59am | INCOMI CL | 619.852.8827 | SDDV | | 2 | $0.00 | $0.00 |
| 09:19am | INCOMI CL | 347.657.9520 | SDDV | | 5 | $0.00 | $0.00 |
| 10:11am | FLORAL NY | 516.269.1938 | SDDV | | 1 | $0.00 | $0.00 |
| 12:34pm | INCOMI CL | 208.906.0315 | SDDV | | 2 | $0.00 | $0.00 |
| 01:29pm | INCOMI CL | 415.570.4364 | SDDV | | 2 | $0.00 | $0.00 |
| 01:38pm | SNFC J CA | 415.570.4364 | SDDV | | 1 | $0.00 | $0.00 |
| 01:57pm | BEREA OH | 440.973.8354 | SDDV | | 4 | $0.00 | $0.00 |
| 02:02pm | INCOMI CL | 801.605.1816 | SDDV | | 3 | $0.00 | $0.00 |
| 02:05pm | INCOMI CL | 858.888.0205 | SDDV | | 3 | $0.00 | $0.00 |
| 02:18pm | Toll F CL | 800.543.6862 | SDDV | | 10 | $0.00 | $0.00 |
| 02:28pm | INCOMI CL | 619.450.7499 | SDDV | | 2 | $0.00 | $0.00 |
| 03:25pm | INCOMI CL | 619.248.6592 | SDDV | | 25 | $0.00 | $0.00 |
| 03:50pm | INCOMI CL | 619.868.9444 | SDDV | | 16 | $0.00 | $0.00 |
| 04:07pm | CAMPO CA | 619.868.9444 | SDDV | | 1 | $0.00 | $0.00 |
| 04:08pm | CLARMN CA | 909.526.5000 | SDDV | | 2 | $0.00 | $0.00 |
| 04:37pm | CORONA CA | 619.347.0726 | SDDV | | 15 | $0.00 | $0.00 |
| 05:05pm | Toll F CL | 877.837.4963 | SDDV | | 1 | $0.00 | $0.00 |
| 05:29pm | INCOMI CL | 619.777.0957 | SDDV | | 8 | $0.00 | $0.00 |
| 05:37pm | CORONA CA | 619.347.0726 | SDDV | | 1 | $0.00 | $0.00 |
| 07:06pm | INCOMI CL | 619.300.5500 | SDDV | | 5 | $0.00 | $0.00 |

*Wednesday, Dec 12*

| Time | Place Called | Number Called | Rate Code | Feature Code | Min | Airtime Charges | LD/Addl Charges |
|---|---|---|---|---|---|---|---|
| 07:17am | INCOMI CL | 619.347.0726 | SDDV | | 1 | $0.00 | $0.00 |
| 10:03am | INCOMI CL | 619.972.3581 | SDDV | | 1 | $0.00 | $0.00 |
| 10:35am | INCOMI CL | 619.719.2737 | SDDV | | 5 | $0.00 | $0.00 |
| 10:45am | INCOMI CL | 619.347.0726 | SDDV | | 3 | $0.00 | $0.00 |
| 10:50am | CORONA CA | 619.347.0726 | SDDV | | 2 | $0.00 | $0.00 |
| 10:51am | CALL WAIT | 509.528.3496 | SDDV | CW | 27 | $0.00 | $0.00 |
| 11:19am | CORONA CA | 619.347.0726 | SDDV | | 2 | $0.00 | $0.00 |
| 02:18pm | INCOMI CL | 509.528.3496 | SDDV | | 34 | $0.00 | $0.00 |
| 03:30pm | Toll F CL | 888.587.0907 | SDDV | | 1 | $0.00 | $0.00 |
| 03:30pm | ESCOND CA | 760.745.2001 | SDDV | | 21 | $0.00 | $0.00 |
| 03:57pm | INCOMI CL | 424.369.3566 | SDDV | | 1 | $0.00 | $0.00 |
| 04:07pm | CORONA CA | 619.347.0726 | SDDV | | 2 | $0.00 | $0.00 |
| 04:42pm | CORONA NM | 619.347.0726 | SDDV | | 1 | $0.00 | $0.00 |
| 05:03pm | ALBUQU NM | 505.738.8447 | SDDV | | 1 | $0.00 | $0.00 |
| 05:24pm | CORONA CA | 619.347.0726 | SDDV | | 1 | $0.00 | $0.00 |
| 05:33pm | INCOMI CL | 619.347.0726 | SDDV | | 1 | $0.00 | $0.00 |
| 07:08pm | INCOMI CL | 619.954.1678 | SDDV | | 2 | $0.00 | $0.00 |
| 07:09pm | INCOMI CL | 619.954.1678 | SDDV | | 1 | $0.00 | $0.00 |
| 07:20pm | Toll F CL | 888.998.2546 | SDDV | | 2 | $0.00 | $0.00 |
| 07:56pm | INCOMI CL | 619.300.5500 | SDDV | | 7 | $0.00 | $0.00 |

*Thursday, Dec 13*

| Time | Place Called | Number Called | Rate Code | Feature Code | Min | Airtime Charges | LD/Addl Charges |
|---|---|---|---|---|---|---|---|
| 07:08am | INCOMI CL | 619.752.2895 | SDDV | | 3 | $0.00 | $0.00 |
| 08:35am | RIVERS NJ | 856.393.6285 | SDDV | | 1 | $0.00 | $0.00 |
| 08:36am | INDEPE OH | 216.446.6571 | SDDV | | 1 | $0.00 | $0.00 |
| 08:59am | QUINCY MA | 617.221.6514 | SDDV | | 1 | $0.00 | $0.00 |

| Time | Place Called | Number Called | Rate Code | Feature Code | Min | Airtime Charges | LD/Addl Charges |
|---|---|---|---|---|---|---|---|
| 09:11am | ENCINI CA | 760.492.3100 | SDDV | | 1 | $0.00 | $0.00 |
| 09:16am | LEMONT IL | 630.343.6858 | SDDV | | 1 | $0.00 | $0.00 |
| 09:17am | LINDEN NJ | 908.290.0648 | SDDV | | 1 | $0.00 | $0.00 |
| 09:18am | PAULS OK | 405.331.5431 | SDDV | | 1 | $0.00 | $0.00 |
| 09:20am | LA JOL CA | 858.337.6493 | SDDV | | 1 | $0.00 | $0.00 |
| 09:22am | PASCO WA | 509.528.3496 | SDDV | | 20 | $0.00 | $0.00 |
| 09:42am | CALL WAIT | 858.337.6493 | SDDV | CW | 6 | $0.00 | $0.00 |
| 10:27am | ESCOND CA | 760.745.2001 | SDDV | | 16 | $0.00 | $0.00 |
| 10:52am | INCOMI CL | 619.300.5500 | SDDV | | 1 | $0.00 | $0.00 |
| 11:26am | SNDG S CA | 619.281.7000 | SDDV | | 2 | $0.00 | $0.00 |
| 11:52am | CORONA CA | 619.347.0726 | SDDV | | 3 | $0.00 | $0.00 |
| 11:55am | CALL WAIT | 619.413.1018 | SDDV | CW | 1 | $0.00 | $0.00 |
| 11:56am | CALL WAIT | 213.246.0971 | SDDV | CW | 3 | $0.00 | $0.00 |
| 12:21pm | INCOMI CL | 718.303.2072 | SDDV | | 2 | $0.00 | $0.00 |
| 12:23pm | INCOMI CL | 718.303.2072 | SDDV | | 3 | $0.00 | $0.00 |
| 12:27pm | STN IS NY | 718.303.2072 | SDDV | | 1 | $0.00 | $0.00 |
| 12:42pm | INCOMI CL | 858.254.4566 | SDDV | | 5 | $0.00 | $0.00 |
| 12:57pm | INCOMI CL | 619.847.3572 | SDDV | | 3 | $0.00 | $0.00 |
| 01:00pm | CORONA CA | 619.347.0726 | SDDV | | 2 | $0.00 | $0.00 |
| 02:03pm | INCOMI CL | 619.847.3572 | SDDV | | 5 | $0.00 | $0.00 |
| 02:10pm | INCOMI CL | 619.719.9640 | SDDV | | 1 | $0.00 | $0.00 |
| 02:32pm | INCOMI CL | 619.347.0726 | SDDV | | 7 | $0.00 | $0.00 |
| 03:51pm | INCOMI CL | 619.347.0726 | SDDV | | 3 | $0.00 | $0.00 |
| 04:51pm | CORONA CA | 619.347.0726 | SDDV | | 4 | $0.00 | $0.00 |
| 05:22pm | INCOMI CL | 858.204.1189 | SDDV | | 2 | $0.00 | $0.00 |
| 05:34pm | INCOMI CL | 619.825.5914 | SDDV | | 3 | $0.00 | $0.00 |
| 05:41pm | CORONA CA | 619.347.0726 | SDDV | | 3 | $0.00 | $0.00 |
| 06:27pm | INCOMI CL | 619.347.0726 | SDDV | | 5 | $0.00 | $0.00 |

*Friday, Dec 14*

| Time | Place Called | Number Called | Rate Code | Feature Code | Min | Airtime Charges | LD/Addl Charges |
|---|---|---|---|---|---|---|---|
| 07:57am | INCOMI CL | 760.532.3651 | SDDV | | 1 | $0.00 | $0.00 |
| 08:03am | LOSANG CA | 213.765.1000 | SDDV | | 3 | $0.00 | $0.00 |
| 08:07am | LOSANG CA | 213.765.1000 | SDDV | | 2 | $0.00 | $0.00 |
| 08:45am | INCOMI CL | 619.737.7350 | SDDV | | 2 | $0.00 | $0.00 |
| 08:52am | CORONA CA | 619.347.0726 | SDDV | | 2 | $0.00 | $0.00 |
| 08:59am | LOSANG CA | 213.765.1000 | SDDV | | 12 | $0.00 | $0.00 |
| 09:11am | SNMN S CA | 310.586.3200 | SDDV | | 4 | $0.00 | $0.00 |
| 09:14am | BEVERL CA | 310.226.7842 | SDDV | | 1 | $0.00 | $0.00 |
| 09:15am | BEVERL CA | 310.226.7842 | SDDV | | 1 | $0.00 | $0.00 |
| 09:15am | BEVERL CA | 310.226.7842 | SDDV | | 1 | $0.00 | $0.00 |
| 09:16am | BEVERL CA | 310.226.7842 | SDDV | | 1 | $0.00 | $0.00 |
| 09:17am | BEVERL CA | 310.226.7842 | SDDV | | 1 | $0.00 | $0.00 |
| 09:17am | BEVERL CA | 310.226.7842 | SDDV | | 1 | $0.00 | $0.00 |
| 09:17am | BEVERL CA | 310.226.7842 | SDDV | | 1 | $0.00 | $0.00 |
| 09:18am | BEVERL CA | 310.226.7842 | SDDV | | 1 | $0.00 | $0.00 |
| 09:18am | BEVERL CA | 310.226.7842 | SDDV | | 1 | $0.00 | $0.00 |
| 09:19am | BEVERL CA | 310.226.7842 | SDDV | | 1 | $0.00 | $0.00 |
| 09:20am | CORONA CA | 619.347.0726 | SDDV | | 2 | $0.00 | $0.00 |
| 09:21am | WALDOR MD | 240.607.5254 | SDDV | | 1 | $0.00 | $0.00 |
| 09:36am | SNFC C CA | 415.538.2000 | SDDV | | 10 | $0.00 | $0.00 |
| 09:47am | BEVERL CA | 310.226.7887 | SDDV | | 2 | $0.00 | $0.00 |
| 09:49am | SNMN S CA | 310.586.3200 | SDDV | | 1 | $0.00 | $0.00 |
| 09:50am | BEVERL CA | 310.226.7842 | SDDV | | 1 | $0.00 | $0.00 |
| 09:53am | LOSANG CA | 213.765.1500 | SDDV | | 1 | $0.00 | $0.00 |
| 09:55am | BEVERL CA | 310.226.7842 | SDDV | | 1 | $0.00 | $0.00 |
| 10:26am | INDEPE OH | 216.446.6571 | SDDV | | 1 | $0.00 | $0.00 |
| 10:32am | LOSANG CA | 323.306.2106 | SDDV | | 1 | $0.00 | $0.00 |
| 10:35am | BEVERL CA | 310.226.7840 | SDDV | | 1 | $0.00 | $0.00 |
| 10:36am | BEVERL CA | 310.226.7845 | SDDV | | 1 | $0.00 | $0.00 |
| 10:37am | DEL MA CA | 858.314.1519 | SDDV | | 1 | $0.00 | $0.00 |
| 10:38am | SNFC C CA | 415.432.6103 | SDDV | | 2 | $0.00 | $0.00 |

619.719.9640 continues...

# EXHIBIT B





**+15095283496**
3:20 PM, Dec 12

One of the benefits of going through me is that if you decide to install, then you will also have a free license to the Powur Platform where you can also refer your friends, family or neighbors and earn a sizable referral compensation.

Yes Baker solar is who will be providing the installation and who would be paid since there will be no finance company involved.





# EXHIBIT C

**Anton@AntonEwing.com**

| | |
|---|---|
| **From:** | sddronevideos+caf_=anton=antonewing.com@gmail.com on behalf of David Brown <freesolarproposals.info@gmail.com> |
| **Sent:** | Wednesday, December 12, 2018 11:15 AM |
| **To:** | SD Drone Videos |
| **Subject:** | RE: Tony |

Got it!


Dave Brown
Independent Powur Sr. Manager
Direct: 509 528-3496
Web: www.freesolarproposals.info

Click the link below for a $0-down free no obligation consultation
https://powur.com/david.brown2/getsolar

Click the link below to learn about our mission
https://powur.com/david.brown2/learn

Realtors, Click the link below to see how to maximize your potential with Powur
http://bit.ly/realtorsolarinfo

**Notice**: CONFIDENTIALITY NOTICE: This message (including attachments) is covered by the Electronic Communications Privacy Act, Title 18 U.S.C. 2510-2521.  DO NOT read, copy or disseminate this communication unless you are the intended addressee.  This email communication contains confidential and/or privileged information intended only for the addressee.  If you have received this communication in error, please call us immediately at (509) 528-3496 and ask to speak to the sender and notify the sender immediately that you have received the communication in error.

Sent from Mail for Windows 10


**From:** SD Drone Videos
**Sent:** Wednesday, December 12, 2018 11:13 AM
**To:** freesolarproposals.info@gmail.com
**Subject:** Tony

**Anton@AntonEwing.com**

| | |
|---|---|
| **From:** | sddronevideos+caf_=anton=antonewing.com@gmail.com on behalf of David Brown <freesolarproposals.info@gmail.com> |
| **Sent:** | Wednesday, December 12, 2018 12:55 PM |
| **To:** | SD Drone Videos |
| **Subject:** | RE: Tony |

Hi Tony and thank you for sending over you bill. I will call you back about 2pm.

Thanks again,

Dave Brown
Independent Powur Sr. Manager
Direct: 509 528-3496
Web: www.freesolarproposals.info

Click the link below for a $0-down free no obligation consultation
https://powur.com/david.brown2/getsolar

Click the link below to learn about our mission
https://powur.com/david.brown2/learn

Realtors, Click the link below to see how to maximize your potential with Powur
http://bit.ly/realtorsolarinfo

**Notice**: CONFIDENTIALITY NOTICE: This message (including attachments) is covered by the Electronic Communications Privacy Act, Title 18 U.S.C. 2510-2521. DO NOT read, copy or disseminate this communication unless you are the intended addressee. This email communication contains confidential and/or privileged information intended only for the addressee. If you have received this communication in error, please call us immediately at (509) 528-3496 and ask to speak to the sender and notify the sender immediately that you have received the communication in error.

Sent from Mail for Windows 10

**From:** SD Drone Videos
**Sent:** Wednesday, December 12, 2018 12:32 PM
**To:** freesolarproposals.info@gmail.com
**Subject:** Re: Tony

see attached

1

Dave, do you have a regular mailing address?


On Wed, Dec 12, 2018 at 11:14 AM David Brown <freesolarproposals.info@gmail.com> wrote:

Got it!




Dave Brown
Independent Powur Sr. Manager
Direct: 509 528-3496
Web: www.freesolarproposals.info

Click the link below for a $0-down free no obligation consultation
https://powur.com/david.brown2/getsolar

Click the link below to learn about our mission
https://powur.com/david.brown2/learn

Realtors, Click the link below to see how to maximize your potential with Powur
http://bit.ly/realtorsolarinfo

**Notice**: CONFIDENTIALITY NOTICE: This message (including attachments) is covered by the Electronic Communications Privacy Act, Title 1{
U.S.C. 2510-2521.  DO NOT read, copy or disseminate this communication unless you are the intended addressee.  This email communication
contains confidential and/or privileged information intended only for the addressee.  If you have received this communication in error, please call us
immediately at (509) 528-3496 and ask to speak to the sender and notify the sender immediately that you have received the communication in error.


Sent from Mail for Windows 10

**Anton@AntonEwing.com**

**From:** sddronevideos+caf_=anton=antonewing.com@gmail.com on behalf of Powur <noreply@powur.com>
**Sent:** Wednesday, December 12, 2018 2:08 PM
**To:** Anthony Stark
**Subject:** Congratulations, your free solar proposal is on the way



Congratulations! Your home has successfully been submitted to Powur PBC by David Brown for a free consultation to determine if your home is a good fit for *cheaper, cleaner, solar energy.*

**Here's what you can expect next...**

1. David will set up a call with you to speak with an energy specialist at Powur PBC to determine if your home is a good fit for solar.
2. If going solar is an option for your home, Powur PBC will prepare a custom proposal for you and will set up a time to review the proposal and how you can *save money on your energy bills without it costing anything upfront.*

For your convenience, you can manage your appointment times and track your progress with Powur PBC by clicking here.

Solar today has honestly *never* been easier. With free installation, no upfront costs, and lower electric bills... it just makes sense. What's better, when you go solar, Powur PBC handles all the work on your behalf.

Thanks for giving us an opportunity to serve you. We're on a mission to power millions of homes by pure sunshine, and create a cleaner, brighter future for life on this planet. And it's even better when that means real cash savings for **you**!

Yours Truly,

Jonathan Budd
CEO, Powur
P.S. If you've ever wondered how solar can *"save you money"*... you're not alone. Many people have asked us the same question and this video may help explain how.

2

# PROOF OF SERVICE

I, Anton Ewing, am over 18, a pro per plaintiff in this matter.  I have filed this FIRST AMENDED COMPLANIT and had it served on Defendants as follows:

**18-cv-2843 LAB JLB Notice has been electronically mailed to:**

I have also emailed a copy of this document to Defendant's attorney directly at the email address he uses to communicate with me at:

rknaier@fitzgeraldknaier.com

and by US Mail, postage pre-paid, first class to:

For Powur, Baker and Budd:

FITZGERALD KNAIER LLP
Robert G. Knaier, Esq. (SBN: 234466)
Keith M. Cochran, Esq. (SBN: 254346)
402 West Broadway, Suite 1400
San Diego, CA 92101

As well as all other CM/ECF users registered in this matter.

I swear under penalty of perjury that the above was served as stated.
Dated: January 17, 2019

/S/ Anton Ewing
Anton Ewing

PROOF OF SERVICE- 1

18CV2843